Chad C. Butterfield, Esq.
Nevada Bar No. 010532
**WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP**
6689 Las Vegas Blvd. South, Suite 200
Las Vegas, Nevada 89119
Telephone: 702.727.1400
Facsimile: 702.727.1401
Email: Chad.Butterfield@wilsonelser.com

*Attorneys for
Ironshore Indemnity Inc.*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| IRONSHORE INDEMNITY INC., <br><br> Plaintiff, <br><br> vs. <br><br> ADAM ROGAS and ERIC KAY, <br><br> Defendants. | Case No. 2:21-cv-01706-JAD-BNW |

### AMENDED COMPLAINT FOR DECLARATORY RELIEF

NOW COMES Plaintiff Ironshore Indemnity Inc. ("Ironshore"), by and through its undersigned counsel, and for its Amended Complaint for Declaratory Relief against Defendants Adam Rogas ("Rogas") and Eric Kay ("Kay") (collectively, the "Insureds"), and state the following:

### I. INTRODUCTION

1.   This lawsuit involves an insurance coverage dispute.  Ironshore issued a "claims made" Excess Liability Insurance Policy (the "Excess Policy") to NS8, Inc. which (among others) insures the directors and officers of NS8, including Defendants Rogas and Kay.  Rogas was NS8's co-founder and former CEO (before his abrupt resignation), and Kay was also NS8's co-founder, former Chief Legal Officer, and former director.

2.   For the original Policy Period of March 4, 2019-20, NS8 and Rogas obtained a $2 million directors and officers ("D&O") insurance policy from Scottsdale Indemnity Company ("Scottsdale"). However, in May 2019, NS8 and Rogas sought to increase their D&O insurance *five-fold*, seeking an additional $8 million in D&O insurance.  Thereafter, NS8 and Rogas purchased

258867121v.1

a first excess policy with Argonaut Insurance Company ($3 million excess $2 million). NS8 and Rogas then sought an additional $5 million in excess coverage from Ironshore. In order receive these higher insurance limits, on May 29, 2019, Rogas – on behalf of "all Insureds," provided an executed "WARRANTY AND REPRESENTATION LETTER" to Ironshore, that expressly states:

DEAR UNDERWRITER:

WARRANTY AND REPRESENTATION LETTER

**This letter is submitted solely in connection with the application for insurance for the above-referenced $5,000,000 limit of liability excess of the first $5,000,000 limit of liability for policy number TBD – Ironshore (hereinafter "Excess Limits") and forms a part thereof. It is understood and agreed that the Insurer has relied upon this letter as being accurate and complete, and such letter is material to the risk assumed by the Insurer solely in connection with the Excess Limits.**

The undersigned authorized officer of NS8 Inc [Rogas] hereby represents and warrants, after inquiry of the Chairperson of the Board, Chief Executive Officer, Chief Financial Officer, Chief Operating Officer, President and General Counsel of NS8 Inc on behalf of himself/herself and all Insureds (as that term is defined in the above-referenced policy) (hereinafter, "Policy") that:…

> (b) No Insured under the Excess Limits has knowledge or information of any act, error or omission which might give rise to a claim(s), suit(s) or action(s) under either the first $2,000,000 limit of liability or Excess Limits, except as follows: (Attach complete details. If they have no such knowledge or information, check here "none": X .)

It is further understood and agreed that if such claim(s), suit(s), action(s), knowledge or information exists, then such claim(s), suit(s) or action(s) and any claim(s), suit(s) or action(s) arising therefrom or arising from such knowledge or information is excluded from coverage under the Excess Limits.

3. Less than six months after submitting the Warranty Letter, on November 9, 2019, the U.S. Securities and Exchange Commission initiated an investigation of NS8, by issuing four separate Subpoenas for documents to NS8, Rogas, and two other NS8 employees. Ten months later, on September 14, 2020, the SEC and the U.S. Department of Justice ("DOJ") each filed separate lawsuits (collectively, the "Government Lawsuits"), and in a related motion alleged Rogas "defrauded investors by using forged documents to entice investors to purchase NS8 securities" worth over $100 million, and then Rogas "pocketed over $17.5 million that had been raised through his fraud."[1]

---

[1] *See*, Exhibit 8: *SEC v. Adam Rogas, et al.*, Case No.: 20-7628 (S.D.N.Y.); SEC's "Motion for Asset Freeze, Order to Show Cause, and Other Relief," p.1.

258867121v.1

4. Specifically, the Government Lawsuits allege that over a two-year period (beginning in 2018), Rogas "defrauded NS8 investors in at least two securities offerings by falsifying NS8's bank statements to give the appearance that NS8 was generating millions of dollars in customer revenue with tens of millions of dollars of assets on hand. In fact, NS8 generated only a fraction of the revenue and had far less assets than what appeared in the doctored bank and financial statements provided to investors."

5. According to the Government Lawsuits, Rogas' *misrepresentations date back to 2018, well before Rogas executed the May 29, 2019 Warranty Letter to Ironshore*. For example, just months *before* Rogas executed the Warranty Letter, on "*January 14, 2019*, in response to a request from an investor for NS8's financial statements, ROGAS sent an email attaching, among other things, a balance sheet and profit and loss statement for 2018, which included fraudulently inflated asset and revenue figures" and on "*February 5, 2019*, ROGAS emailed to a New York-based investor one of the Customer Revenue Spreadsheets that, as described above, contained fraudulently inflated revenue figures." By the end of the scheme, Rogas represented to investors that NS8 had $62 million in revenues in its bank accounts – when, in reality, NS8 had less than $30,000 in its bank accounts. When an NS8 employee allegedly learned of the fraudulent bank statements, Rogas stated he would meet the employee on September 1, 2020, to give him access to the accounts; however, Rogas "did not show up to that meeting" and he resigned that day from NS8. Based on NS8's securities offerings, the Government Lawsuits allege that Rogas himself pocketed $17.5 million in proceeds that he took from these investors – and the SEC seeks disgorgement of the same.

6. On September 18, 2020 in an Emergency Motion against Rogas, the SEC stated: "Rogas clearly and flagrantly violated the anti-fraud provisions of the securities laws," and given "[t]he nature of Rogas's fraud – forging documents, knowing that those documents would be provided to investors and regulators, while pocketing $17.5 million – demonstrates a risk that Rogas will dissipate or conceal his remaining assets and falsify evidence absent an order freezing assets, requiring an accounting, and preserving evidence." Based on the SEC's Motion, on September 24, 2020, the U.S. District Court for the Southern District of New York granted an Order "freezing" over $35 million of Rogas' assets.

7. Separately, on July 22, 2021, attorneys for NS8 sent a letter directed to Defendant Kay's attorneys, and that letter states, "we have determined that Mr. Kay breached his fiduciary duties owed to NS8 as summarized below," including that:

> Mr. Kay repeatedly learned of the aforementioned irregularities and discrepancies through internal NS8 communications that *put him on notice of the fraud being*

-3-

258867121v.1

> *perpetrated by NS8's former CEO, Adam Rogas*. For example,…NS8's finance employees repeatedly advised Mr. Kay of NS8's failure to establish corporate governance and internal controls. They informed Mr. Kay, for instance, that Mr. Rogas maintained exclusive access to NS8's revenue accounts at Bank of America and PayPal, despite their repeated requests that Mr. Rogas provide them access. An employee whistleblower complaint in 2019 specifically alleged that NS8 was touting false revenue and customer counts, allegations which the SEC determined warranted an investigation.

(Hereinafter, the "Kay Demand Letter") (emphasis added).

8. Kay, in turn, submitted the Kay Demand Letter to Ironshore, specifically stating: "please find a demand for tender of insurance policy limits and assertion of claims under the Policy …[p]ursuant to the Policy, the Former Officer [Kay], hereby provides notice that a claim has been filed against him and requests coverage pursuant to the terms and conditions of the Policy."

9. The Government Lawsuits and the Kay Demand Letter have been submitted to the Insurers (including Ironshore) each as a "Claim" under the respective policies.

10. As expressly stated in the Warranty Letter, Rogas "[t]he undersigned authorized officer of NS8 Inc hereby represents and warrants…on behalf of himself/herself and *all Insureds*… that:…[n]o Insured…has knowledge or information of any act, error or omission which might give rise to a claim," and "[i]t is further understood and agreed that if such…knowledge or information exists, then such claim(s), suit(s) or action(s)…arising from such knowledge or information is excluded from coverage under the Excess Limits."

11. Here, Rogas was the CEO of NS8; it is alleged that since 2018, Rogas himself was physically altering and falsifying NS8's banking statements and then sending these falsified statements to investors to participate in NS8's stock offerings, of which Rogas himself pocketed $17.5 million. Because Rogas – on behalf of "all Insureds," "represent[ed] and warrant[ed]" to Ironshore that he had no "knowledge or information of any act, error or omission which might give rise to a claim," yet according to the Government Lawsuits Rogas had such "knowledge or information," and therefore any "claim arising from such knowledge or information *is excluded from coverage*" – and there is no coverage under the Policy for the Government Lawsuits and/or the Kay Demand Letter.

12. Given the Kay Demand Letter, sent on behalf of NS8, expressly states, "[t]he amount of damages for the above categories *far exceeds the available limits of liability under NS8's applicable D&O insurance policies*. Accordingly, please be advised that *the Debtor [NS8][2] intends*

---

[2] On October 27, 2020, NS8 (now Cyber Litigation, Inc.) filed for Chapter 11 bankruptcy. *See*, *In Re NS8, Inc.*, Case No.: 20-12702, filed in the U.S. Bankruptcy Court for the District of Delaware.

-4-

258867121v.1

*to pursue these claims against Mr. Kay and seek recovery of monetary damages through the commencement of an adversary proceeding*," an actual controversy exists between Ironshore and the Insureds, concerning Ironshore's purported obligation to provide the Insureds with a defense and indemnity for the Government Lawsuits and the Kay Demand Letter, and this dispute cannot be resolved without a declaration of the rights and responsibilities of the parties by this Court.

## II. PARTIES

13. Plaintiff Ironshore is a business corporation incorporated under the laws of the State of Illinois, with its principal place of business located at 175 Berkeley Street, Boston, Massachusetts, 02116. As such, Plaintiff Ironshore is a citizen of Illinois and Massachusetts.

14. Upon information and belief, Defendant Rogas is a citizen of Nevada.

15. Upon information and belief, Defendant Kay is a citizen of Florida.

## III. JURISDICTION AND VENUE

16. This court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 respecting diversity jurisdiction insofar as it involves citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. Specifically, the Kay Demand Letter expressly states, "[t]he amount of damages for the above categories far exceeds the available limits of liability under NS8's applicable D&O insurance policies," which is more than $6 million.

17. Venue is appropriate under 28 U.S.C. § 1391 because a substantial part of the relevant events occurred in this District, including the issuance of the Policy to NS8's address at "241 W. Charleston Blvd., Suite 111 Las Vegas, NV 89102," as well as much of the conduct at issue involved acts and omissions in Las Vegas, Nevada.

## IV. UNDISPUTED BACKGROUND FACTS

**A.  The Insurance Policies**

**1.  Underlying D&O Insurance Policies**

18. Scottsdale issued the primary D&O policy to NS8 with a Policy Period of March 4, 2019 to September 4, 2020, with a $2 million Limit of Liability, and pursuant to Endorsement, with a Three-Year Discovery Period (hereinafter, the "Primary Policy").

19. A true and correct copy of the Scottsdale Policy is attached hereto as Exhibit 1.

20. Argonaut Insurance Company issued the first excess D&O policy to NS8 with a Policy Period of May 23, 2019 to September 4, 2020 and a $3 million Limit of Liability, and pursuant to Endorsement No. 8, with a Three-Year Extended Reporting Period.

21. Section B.1. of the Directors and Officers and Company Coverage Section of the Primary Policy defines "**Claim**," which provides:

-5-

a. a written demand against any **Insured** for monetary damages or non-monetary or injunctive relief;

b. a written demand by one or more of the securities holders of the **Company** upon the board of directors or the management board of the **Company** to bring a civil proceeding against any of the **Directors and Officers** on behalf of the **Company**;

c. a civil proceeding against any **Insured** seeking monetary damages or non-monetary or injunctive relief, commenced by the service of a complaint or similar pleading;

d. a criminal proceeding against any **Insured** commenced by a return of an indictment or similar document, or receipt or filing of a notice of charges;

e. an arbitration proceeding against any **Insured** seeking monetary damages or non-monetary or injunctive relief; or

f. a civil, administrative or regulatory proceeding, or a formal governmental investigation against any **Insured** commenced by the filing of a notice of charges, investigative order or similar document.

22. The Scottsdale Primary Policy defines **Costs, Charges and Expenses** to include "reasonable and necessary legal costs, charges, fees and expenses incurred by any of the **Insureds** in defending **Claims**…".

23. Presently, the Scottsdale Primary Policy's $2 million Limit of Liability has been exhausted, and Argonaut is presently paying the **Costs, Charges and Expenses** related to the Government Lawsuits.

**2.   The Ironshore Second Excess Policy**

24. Ironshore issued the second Excess Policy to NS8 with a Policy Period of May 23, 2019 to September 4, 2020, with a $5 million Limit of Liability and, through Endorsement No. 7, a Run-Off Period from September 4, 2020 to September 4, 2023.

25. A true and correct copy of the Ironshore Excess Policy is attached hereto as Exhibit 2.

26. Except as may be otherwise provided in the Excess Policy, the Ironshore Excess Policy follows the terms, definitions, conditions, exclusions and limitations of the Scottsdale Primary Policy.

27. By letter dated May 29, 2019, on NS8's letterhead and executed by NS8's then CEO Rogas, NS8 and Rogas – on behalf of "all Insureds," provided a "WARRANTY AND REPRESENTATION LETTER" to Ironshore's "UNDERWRITER," which states as follows:

May 29, 2019

-6-

258867121v.1

...

RE: $5,000,000 limit of liability excess of the first $5,000,000 limit of liability
Excess Directors & Officers Liability Insurance
TBD – Ironshore

DEAR UNDERWRITER:

WARRANTY AND REPRESENTATION LETTER

**This letter is submitted solely in connection with the application for insurance for the above-referenced $5,000,000 limit of liability excess of the first $5,000,000 limit of liability for policy number TBD – Ironshore (hereinafter "Excess Limits") and forms a part thereof. It is understood and agreed that the Insurer has relied upon this letter as being accurate and complete, and such letter is material to the risk assumed by the Insurer solely in connection with the Excess Limits.**

The undersigned authorized officer of NS8 Inc hereby represents and warrants, after inquiry of the Chairperson of the Board, Chief Executive Officer, Chief Financial Officer, Chief Operating Officer, President and General Counsel of NS8 Inc on behalf of himself/herself and all Insureds (as that term is defined in the above-referenced policy) (hereinafter, "Policy") that:

(a) There has not been nor is there now pending any claim(s), suit(s) or action(s) (including but not limited to any investigation) against any Insured, except as follows: (Attach complete details. If no such claims, suit(s) or action(s), check here NONE __X __.)

(b) No Insured under the Excess Limits has knowledge or information of any act, error or omission which might give rise to a claim(s), suit(s) or action(s) under either the first $2,000,000 limit of liability or Excess Limits, except as follows: (Attach complete details. If they have no such knowledge or information, check here "none": X .)

It is further understood and agreed that if such claim(s), suit(s), action(s), knowledge or information exists, then such claim(s), suit(s) or action(s) and any claim(s), suit(s) or action(s) arising therefrom or arising from such knowledge or information is excluded from coverage under the Excess Limits.

The aforesaid exclusion shall apply solely to the Excess Limits for which this Warranty and Representation Letter is being submitted. Coverage afforded under the Excess Limits and the first $2,000,000 limit of liability of the Policy shall be subject to all terms, conditions, limitations and exclusions contained in the Policy.

_____
AUTHORIZED SIGNATURE
Chief Executive Officer

28. A true and correct copy of the Warranty Letter is attached hereto as Exhibit 3.

**B.    The Underlying Matters**

-7-

258867121v.1

**1.    SEC Lawsuit**

29.    On November 29, 2019, the SEC sent Subpoenas for documents to NS8 and three individuals, including Rogas.

30.    On September 14, 2020, the SEC filed the SEC Lawsuit against Rogas, captioned: *United States Securities And Exchange Commission v. Adam P. Rogas, et al.*, Case No. 20-7628, filed before the United States District Court for the Southern District of New York.

31.    A true and correct copy of the SEC Lawsuit is attached as Exhibit 4.

32.    The first paragraph of the SEC Lawsuit alleges:

1. *Beginning in at least 2018* and continuing through the summer of 2020, Defendant Adam P. Rogas ("Defendant" or "Rogas"), a founder and the former Chief Executive Officer ("CEO") of NS8, Inc. ("NS8"), a private technology company, *defrauded NS8 investors* in at least two securities offerings *by falsifying NS8's bank statements* to give the appearance that NS8 was generating millions of dollars in customer revenue with tens of millions of dollars of assets on hand. In fact, NS8 generated only a fraction of the revenue and had far less assets than what appeared in the doctored bank and financial statements provided to investors.  (Emphasis added.)

33.    With respect to the Rogas "falsifying NS8 bank statements," at Paragraph 25 and 26 of the SEC Lawsuit, the SEC provides "[a] month-by-month summary of the inflated revenue from the falsified Revenue Account statements is below."  Specifically, the SEC Lawsuit alleges "[a]s a result of Rogas's fraudulent conduct," that "*each of the Revenue Account bank statements* distributed to the finance department or externally to investors or prospective investors *from January 2018* through June 2020 *were false*. As a result, each of the NS8 financial statements from 2018 to 2020 were also false and materially misstated, among other things, the balance of the Revenue Account, NS8's revenue, and NS8's assets." (Emphasis added.)  For example, *prior to May 29, 2019* – *when Rogas executed the Warranty Letter*, the SEC Lawsuit's month-by-month summary shows 16 statements that were false, including for April 2019 wherein NS8's "**Actual Balance**" in NS8's bank account was $1,001,042.96, versus NS8's allegedly "**Falsified Balance**" of $13,587,745.76, and the "**Falsely Inflated Amount**" whereby Rogas allegedly misrepresented the monies in the bank account *by more than $12 million*:

| Month | Actual Balance | Falsified Balance | Falsely Inflated Amount |
|---|---|---|---|
| Jan-18 | $101,189.80 | $1,138,353.63 | $1,037,163.83 |
| Feb-18 | $103,483.35 | $1,291,295.06 | $1,187,811.71 |
| Mar-18 | $77,823.09 | $1,444,413.21 | $1,366,590.12 |
| Apr-18 | $60,539.44 | $1,644,931.28 | $1,584,391.84 |
| May-18 | $63,864.84 | $1,925,578.12 | $1,861,713.28 |
| Jun-18 | $49,932.17 | $2,262,786.57 | $2,212,854.40 |
| Jul-18 | $51,052.84 | $2,690,807.00 | $2,639,754.16 |

| | | | |
|---|---|---|---|
| Aug-18 | $54,208.04 | $3,165,174.61 | $3,110,966.57 |
| Sep-18 | $56,635.29 | $3,730,668.41 | $3,674,033.12 |
| Oct-18 | $10,272.39 | $4,373,334.17 | $4,363,061.78 |
| Nov-18 | $1,869.86 | $5,136,414.04 | $5,134,544.18 |
| Dec-18 | $2,859,995.28 | $8,869,155.52 | $6,009,160.24 |
| Jan-19 | $4,076,163.35 | $15,145,101.78 | $11,068,938.43 |
| Feb-19 | $4,078,713.60 | $15,025,236.22 | $10,946,522.62 |
| Mar-19 | $3,925,343.94 | $15,787,765.08 | $11,862,421.14 |
| Apr-19 | $1,001,042.96 | $13,587,745.76 | $12,586,702.80 |
| May-19 | $1,004,558.83 | $14,993,052.97 | $13,988,494.14 |
| Jun-19 | $506,578.00 | $16,681,077.44 | $16,174,499.44 |
| Jul-19 | $12,284.67 | $17,479,624.51 | $17,467,339.84 |
| Aug-19 | $6,012.48 | $17,992,113.81 | $17,986,101.33 |
| Sep-19 | $5,636.10 | $23,745,307.13 | $23,739,671.03 |
| Oct-19 | $12,339.52 | $26,126,231.51 | $26,113,891.99 |
| Nov-19 | $22,726.71 | $29,150,181.27 | $29,127,454.56 |
| Dec-19 | $32,719.24 | $34,495,297.68 | $34,462,578.44 |
| Jan-20 | $39,005.42 | $38,149,825.57 | $38,110,820.15 |
| Feb-20 | $45,407.75 | $42,244,565.43 | $42,199,157.68 |
| Mar-20 | $52,983.78 | $46,945,839.43 | $46,892,855.65 |
| Apr-20 | $59,389.31 | $51,559,561.43 | $51,500,172.12 |
| May-20 | $70,363.81 | $56,193,852.43 | $56,123,488.62 |
| Jun-20 | $28,051.47 | $62,088,506.43 | $62,060,454.96 |

34. The SEC Lawsuit (¶26) expressly alleges, "[a]s a result of Rogas's fraudulent conduct, each of the Revenue Account bank statements distributed to the finance department or externally to investors or prospective investors from January 2018 through June 2020 were false. As a result, *each of the NS8 financial statements from 2018* to 2020 *were also false and materially misstated*, among other things, the balance of the Revenue Account, NS8's revenue, and NS8's assets."

**2.    The DOJ Lawsuit**

35. On the same day as the SEC Lawsuit, on September 14, 2020, the DOJ filed the three count Sealed Criminal Complaint against Rogas for Securities Fraud, Fraud in the Sale of Securities, and Wire Fraud.

36. A true and correct copy of the Sealed Criminal Complaint is attached hereto as Exhibit 5.

37. Specifically, the Sealed Criminal Complaint alleges:

6. …From at least in or about 2019[3] through in or about September 2020, ROGAS operated a fraudulent scheme to deceive NS8's investors by falsely inflating the

---

[3] Paragraph 14 of the Sealed Criminal Complaint alleges, "From my review of emails provided by NS8, I have learned that ADAM ROGAS, the defendant, provided fraudulently inflated financial statements to existing NS8 investors. For example: a. *On or about January 14, 2019*, in response to a request from an investor for NS8's financial statements, ROGAS sent an email attaching, among other things, a balance sheet and profit and loss statement for 2018, which included fraudulently inflated asset and revenue figures. b. *On or about February 5, 2019*, ROGAS emailed to a New York-based investor one of the Customer Revenue Spreadsheets that, as described above, contained fraudulently inflated revenue figures."

258867121v.1

company's reported revenue and assets by substantial amounts. As part of his fraudulent scheme, ROGAS used falsified bank statements to cause material misrepresentations to be made to investors regarding NS8's assets and revenue, including by showing tens of millions of dollars in assets and revenue that did not exist. Through those material misrepresentations, ROGAS enticed investors to purchase securities in two fundraising rounds which provided NS8 with at least approximately $123 million in funds. ROGAS subsequently tendered NS8 shares he owned and otherwise controlled, obtaining at least approximately $17.5 million as a result.

38. On October 13, 2020, the Criminal Indictment was filed against Rogas which, identical to the Sealed Criminal Complaint, includes three counts against Rogas for Securities Fraud, Fraud in the Sale of Securities, and Wire Fraud.

39. A true and correct copy of the Criminal Indictment is attached hereto as Exhibit 6.

40. Specifically, the Criminal Indictment alleges:

**Overview of the Fraudulent Scheme**

3. *From at least in or about 2019* through in or about September 2020, ADAM ROGAS, the defendant, operated a fraudulent scheme to deceive NS8's investors by falsely inflating the company's reported revenue and assets by substantial amounts. As part of his fraudulent scheme, ROGAS used falsified bank statements to cause material misrepresentations to be made to investors regarding NS8's assets and revenue, including by showing tens of millions of dollars in assets and revenue that did not exist. Through those material misrepresentations, ROGAS enticed investors to purchase securities in two fundraising rounds which provided NS8 with at least approximately $123 million in funds. ROGAS subsequently tendered NS8 shares he owned and otherwise controlled, obtaining at least approximately $17.5 million as a result.

*          *          *

8. *From at least in or about January 2019* up to and including in or about September 2020, in the Southern District of New York, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses…

**3.     The Kay Demand Letter**

41. By letter dated July 26, 2021, attorneys for Defendant Kay sent a letter to Ironshore, which enclosed a copy of the Kay Demand Letter dated July 22, 2021. The July 26 letter, on behalf of Kay, to Ironshore states: "please find a demand for tender of insurance policy limits and assertion of claims under the Policy [*i.e*., the Kay Demand Letter]…Pursuant to the Policy, the Former Officer [Kay], hereby provides notice that a claim has been filed against him and requests coverage pursuant to the terms and conditions of the Policy."

42. A true and correct copy of the July 26, 2021 letter is attached hereto within Group Exhibit 7.

-10-

258867121v.1

43. The Kay Demand Letter is from attorneys "represent[ing]…NS8 Inc." to attorneys representing Kay, and the Kay Demand Letter alleges "we have determined that Mr. Kay breached his fiduciary duties owed to NS8 as summarized below."

44. A true and correct copy of the Kay Demand Letter is attached hereto within Group Exhibit 7.

45. In addition, the Kay Demand Letter states:

> Mr. Kay repeatedly learned of the aforementioned irregularities and discrepancies through internal NS8 communications that put him on notice of the fraud being perpetrated by NS8's former CEO, Adam Rogas. For example, NS8's sales and alliances employees advised Mr. Kay that they could identify and verify only a tiny fraction of the many thousands of customers that NS8 touted to board members, investors, and other third parties and that Mr. Rogas presented in purported customer metrics-related documents, despite trying to identify these customers for years. NS8's research and development employees separately communicated exactly the same concerns to Mr. Kay. NS8's finance employees repeatedly advised Mr. Kay of NS8's failure to establish corporate governance and internal controls. They informed Mr. Kay, for instance, that Mr. Rogas maintained exclusive access to NS8's revenue accounts at Bank of America and PayPal, despite their repeated requests that Mr. Rogas provide them access. An employee whistleblower complaint in 2019 specifically alleged that NS8 was touting false revenue and customer counts, allegations which the SEC determined warranted an investigation.

### 4. The Asset Freeze Motion and Order

46. On or about September 14, 2020, the SEC filed a motion in the United States District Court for the Southern District of New York, seeking injunctive relief to freeze Rogas' assets as a result of the allegations of wrongdoing, including the alleged fraudulent bank statements, false statements and other false financial information ("the Asset Freeze Motion").

47. A true and correct copy of the Asset Freeze Motion is attached hereto as Exhibit 8.

48. On or about September 18, 2020, the Court granted the SEC's motion finding among things that the SEC "made a sufficient and proper showing in support of the relief granted herein" which included the freezing of more than $35 million in Rogas' assets ("the Asset Freeze Order").

49. A true and correct copy of the Asset Freeze Order is attached hereto as Exhibit 9.

### COUNT I
### REQUEST FOR DECLARATORY JUDGMENT:
### NO DUTY TO DEFEND

50. Ironshore repeats and realleges each and every allegation set forth above as though fully set forth herein.

-11-

258867121v.1

51.     There is an actual and justiciable controversy between the parties as to whether Ironshore has a duty to defend the Insureds for the Government Lawsuits and the Kay Demand Letter under the Ironshore Excess Policy, which may be determined by a judgment order of this Court.

52.     The Government Lawsuits and the Kay Demand Letter are barred from coverage under the Ironshore Excess Policy based on the Warranty Exclusion, and/or other terms, conditions and exclusions of the Ironshore Excess Policy.

53.     Specifically, through the Warranty Letter, Rogas – on behalf of "all Insureds," "represent[ed] and warrant[ed]" to Ironshore that he had no "knowledge or information of any act, error or omission which might give rise to a claim," yet based on the Government Lawsuits he had such "knowledge or information" and, therefore, any "claim arising from such knowledge or information *is excluded from coverage*" – such that there is no coverage under the Policy for the Government Lawsuits and/or the Kay Demand Letter.

54.     As a result of the foregoing, coverage is precluded, and Ironshore has no duty to defend the Insureds for the Government Lawsuits and the Kay Demand Letter under the Ironshore Excess Policy.

WHEREFORE, Ironshore respectfully requests that this Court enter a judgment in Ironshore's favor declaring:

a. Ironshore owes no duty to defend the Insureds, nor to pay any **Costs, Charges and Expenses** on behalf of the Insureds, under the Ironshore Excess Policy for the Government Lawsuits and the Kay Demand Letter; and

b. Any and all other relief this Court may deem just and proper.

/ / /

/ / /

/ / /

258867121v.1

**COUNT II**
**REQUEST FOR DECLARATORY JUDGMENT:**
**NO DUTY TO INDEMNIFY**

55. Ironshore repeats and realleges each and every allegation set forth above as though fully set forth herein.

56. There is an actual and justiciable controversy between the parties as to whether Ironshore has a duty to indemnify the Insureds for the Government Lawsuits and the Kay Demand Letter under the Ironshore Excess Policy, which may be determined by a judgment order of this Court.

57. The Government Lawsuits and the Kay Demand Letter are barred from coverage under the Ironshore Excess Policy based on the Warranty Exclusion, and/or other terms, conditions and exclusions of the Ironshore Excess Policy.

58. Specifically, through the Warranty Letter, Rogas – on behalf of "all Insureds," "represent[ed] and warrant[ed]" to Ironshore that he had no "knowledge or information of any act, error or omission which might give rise to a claim," yet based on the Government Lawsuits he had such "knowledge or information" and, therefore, any "claim arising from such knowledge or information *is excluded from coverage*" – such that there is no coverage under the Policy for the Government Lawsuits and/or the Kay Demand Letter.

59. As a result of the foregoing, coverage is precluded, and Ironshore has no duty to indemnify the Insureds for any Loss related to the Government Lawsuits and the Kay Demand Letter under the Ironshore Excess Policy.

WHEREFORE, Ironshore respectfully requests that this Court enter a judgment in Ironshore's favor declaring:

   a. Ironshore owes no duty to indemnify the Insureds for any **Loss** under the Ironshore Excess Policy for the Government Lawsuits and the Kay Demand Letter; and

   b. Any and all other relief this Court may deem just and proper.

-13-

1  DATED this 17th day of September, 2021.

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**

By: /s/ Chad C. Butterfield
Chad C. Butterfield, Esq.
Nevada Bar No. 10532
6689 Las Vegas Blvd. South, Suite 200
Las Vegas, Nevada 89119
Telephone: 702.727.1400
Facsimile: 702.727.1401
*Attorneys for Ironshore Indemnity Inc.*

-14-

258867121v.1