# EXHIBIT 1

# EXHIBIT 1

Jeffrey D. Olster
Nevada Bar No. 8864
Jeff.Olster@lewisbrisbois.com
LEWIS BRISBOIS BISGAARD & SMITH LLP
6385 S. Rainbow Boulevard, Suite 600
Las Vegas, Nevada 89118
Tel:  (702) 893-3383
Fax: (702) 893-3789

Michael P. Duffy
(*Pro hac vice* application pending)
MDuffy@peabodyarnold.com
PEABODY & ARNOLD LLP
600 Atlantic Avenue
Boston, Massachusetts 02210
Tel: (617) 951-2002

*Attorneys for*
*ARGONAUT INSURANCE COMPANY*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| IRONSHORE INDEMNITY INC.,<br><br>             Plaintiffs,<br><br>v.<br><br>ADAM ROGAS and ERIC KAY,<br><br>             Defendants.<br>_____<br>ARGONAUT INSURANCE COMPANY,<br><br>             Plaintiff-Intervenor,<br><br>      vs.<br><br>ADAM ROGAS and ERIC KAY,<br><br>             Defendant | Case No. 2:21-cv-01706-JAD-BNW<br><br>**INTERVENOR ARGONAUT INSURANCE COMPANY'S COMPLAINT FOR DECLARATORY RELIEF** |

1

Plaintiff-Intervenor Argonaut Insurance Company. ("Argonaut"), by and through its undersigned counsel, and for its Intervenor Complaint for Declaratory Relief against Defendants Adam Rogas ("Rogas") and Eric Kay ("Kay") (collectively the "Insureds") states the following:

## I. INTRODUCTION

1.      This lawsuit involves an insurance coverage dispute. Argonaut issued a "claims made" Follow Form Excess Insurance Policy (the "Argonaut Excess Policy") to NS8, Inc. ("NS8") which (among other things) covers certain Loss that the directors and officers of NS8 are legally obligated to pay as a result of covered Claims against them. The Defendants Rogas and Kay were directors and/or officers of NS8.  Rogas was NS8's co-founder and former CEO (before his abrupt resignation), and Kay was also NS8's co-founder, former Chief Legal Officer, and former director.

2.      For the original Policy Period of March 4, 2019-20, NS8 and Rogas obtained a $2 million directors and officers ("D&O") insurance policy from Scottsdale Indemnity Company ("Scottsdale"). However, in May 2019, NS8 and Rogas sought to increase their D&O insurance *five-fold*, seeking an additional $8 million in D&O insurance. Thereafter, NS8 and Rogas purchased a first excess policy with Argonaut ($3 million excess of $2 million).  In order receive these higher insurance limits, on May 23, 2019, Rogas provided an executed "Higher Limits Warranty" to Argonaut, that expressly states:

> *The undersigned authorized signatory hereby represents and warrants on behalf of all persons and entities proposed for insurance, that as respects the $3M excess of $2M Limit of Liability only, after reasonable inquiry, no person or entity proposed for insurance possesses knowledge or information of any actual or alleged fact, circumstance, error, omission, act, misstatement, misleading statement of breach of duty (collectively referred hereinafter as a "Wrongful Act") which is reasonably likely to give rise to a Material Event, as that term is defined by the proposed Argo Flex-XS Follow Form Excess Insurance Policy, except as described below.*
>
> *Further, the undersigned acknowledges on behalf of all persons or entities proposed for insurance that no coverage will be available under the proposed insurance for any demand, claim, suit, or proceeding against, or other matter or circumstance involving, the Insured(s), as that term is defined by the proposed Argo Flex-XS Follow Form Excess Insurance Policy, arising out of, based upon or attributable to, or in any way involving any Wrongful Act which is described below, for any Wrongful Act which is required to be described below or of which any person or entity proposed has knowledge or information.*

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

*It is understood and agreed that the Insurer has relied upon this statement and the disclosures herein (the "Warranty") as being accurate and complete, and that this Warranty is material to the risk assumed by the Insurer in connection with any decision to bind coverage and is deemed part of the application for the proposed policy.*

Wrongful Acts(s)

None

3.     Less than six months after NS8 signed and submitted the Higher Limits Warranty to Argonaut, on November 9, 2019, the U.S. Securities and Exchange Commission initiated an investigation of NS8, by issuing four separate Subpoenas for documents to NS8, Rogas, and two other NS8 employees. Ten months later, on September 14, 2020, the SEC and the U.S. Department of Justice ("DOJ") each filed separate lawsuits (collectively, the "Government Lawsuits"), and in a related motion alleged Rogas "defrauded investors by using forged documents to entice investors to purchase NS8 securities" worth over $100 million, and then Rogas "pocketed over $17.5 million that had been raised through his fraud."[1]

4.     Specifically, the Government Lawsuits allege that over a two-year period (beginning in 2018), Rogas "defrauded NS8 investors in at least two securities offerings by falsifying NS8's bank statements to give the appearance that NS8 was generating millions of dollars in customer revenue with tens of millions of dollars of assets on hand. In fact, NS8 generated only a fraction of the revenue and had far less assets than what appeared in the doctored bank and financial statements provided to investors."

5.     According to the Government Lawsuits, Rogas' _misrepresentations date back to 2018, well before Rogas executed the May 23, 2019 Higher Limits Warranty to Argonaut_. For example, just months _before_ Rogas executed the Higher Limits Warranty, on "_January 14, 2019_, in response to a request from an investor for NS8's financial statements, Rogas sent an email attaching, among other things, a balance sheet and profit and loss statement for 2018, which

---

[1] *See*, *SEC v. Adam Rogas, et al.*, Case No.: 20-7628 (S.D.N.Y.); SEC's "Motion for Asset Freeze, Order to Show Cause, and Other Relief," p.1, attached as Exhibit 8 to the Complaint of the Plaintiff Ironshore Insurance Company in this action.


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  included fraudulently inflated asset and revenue figures" and, on "*February 5, 2019*, Rogas

2  emailed to a New York-based investor one of the Customer Revenue Spreadsheets that, as

3  described above, contained fraudulently inflated revenue figures." By the end of the scheme,

4  Rogas represented to investors that NS8 had $62 million in revenues in its bank accounts – when,

5  in reality, NS8 had less than $30,000 in its bank accounts. When an NS8 employee allegedly

6  learned of the fraudulent bank statements, Rogas stated he would meet the employee on

7  September 1, 2020, to give him access to the accounts; however, Rogas "did not show up to that

8  meeting" and he resigned that day from NS8. Based on NS8's securities offerings, the

9  Government Lawsuits allege that Rogas himself pocketed $17.5 million in proceeds that he took

10  from these investors – and the SEC seeks disgorgement of the same.

11      6.      On September 18, 2020, in an Emergency Motion against Rogas, the SEC stated:

12  "Rogas clearly and flagrantly violated the anti-fraud provisions of the securities laws," and given

13  "[t]he nature of Rogas's fraud – forging documents, knowing that those documents would be

14  provided to investors and regulators, while pocketing $17.5 million – demonstrates a risk that

15  Rogas will dissipate or conceal his remaining assets and falsify evidence absent an order freezing

16  assets, requiring an accounting, and preserving evidence." Based on the SEC's Motion, on

17  September 24, 2020, the U.S. District Court for the Southern District of New York granted an

18  Order "freezing" over $35 million of Rogas' assets.

19      7.      Separately, on July 22, 2021, attorneys for NS8 sent a letter directed to Defendant

20  Kay's attorneys, and that letter states, "we have determined that Mr. Kay breached his fiduciary

21  duties owed to NS8 as summarized below," including that:

22      Mr. Kay repeatedly learned of the aforementioned irregularities and discrepancies
        through internal NS8 communications that *put him on notice of the fraud being*
23      *perpetrated by NS8's former CEO, Adam Rogas*. For example,…NS8's finance
        employees repeatedly advised Mr. Kay of NS8's failure to establish corporate
24      governance and internal controls. They informed Mr. Kay, for instance, that Mr.
        Rogas maintained exclusive access to NS8's revenue accounts at Bank of America
25      and PayPal, despite their repeated requests that Mr. Rogas provide them access. An
        employee whistleblower complaint in 2019 specifically alleged that NS8 was
26      touting false revenue and customer counts, allegations which the SEC determined
        warranted an investigation.
27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

(Hereinafter, the "Kay Letter") (emphasis added).

8.     Kay, in turn, submitted the Kay Letter to Argonaut for potential coverage under the Argonaut Excess Policy.

9.     The Government Lawsuits and the Kay Letter have been submitted to the Insurers (including Argonaut) each as a "Claim" under the respective policies.

10.    As expressly stated in the Higher Limits Warranty, Rogas as the "*undersigned authorized signatory hereby represents and warrants on behalf of all persons and entities proposed for insurance, that as respects the $3M excess of $2M Limit of Liability only, after reasonable inquiry, no person or entity proposed for insurance possesses knowledge or information of any actual or alleged fact, circumstance, error, omission, act, misstatement, misleading statement of breach of duty (collectively referred hereinafter as a "Wrongful Act") which is reasonably likely to give rise to a Material Event, as that term is defined by the proposed Argo Flex-XS Follow Form Excess Insurance Policy, except as described below"* and *"acknowledges on behalf of all persons or entities proposed for insurance that no coverage will be available under the proposed insurance for any demand, claim, suit, or proceeding against, or other matter or circumstance involving, the Insured(s), as that term is defined by the proposed Argo Flex-XS Follow Form Excess Insurance Policy, arising out of, based upon or attributable to, or in any way involving any Wrongful Act which is described below, for any Wrongful Act which is required to be described below or of which any person or entity proposed has knowledge or information."* The Higher Limits Warranty then discloses the following "Wrongful Acts(s)": "None."

11.    Here, Rogas was the CEO of NS8; it is alleged that since 2018, Rogas himself was physically altering and falsifying NS8's banking statements and then sending these falsified statements to investors to participate in NS8's stock offerings, of which Rogas himself pocketed $17.5 million. Because Rogas – "*on behalf of all persons and entities proposed for insurance*" – "represent[ed] and warrant[ed]" to Argonaut that "*no person or entity proposed for insurance possesses knowledge or information of any actual or alleged fact, circumstance, error, omission, act, misstatement, misleading statement of breach of duty (collectively referred hereinafter as a*

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

5

*"Wrongful Act") which is reasonably likely to give rise to a Material Event,"* yet according to the Government Lawsuits Rogas had such "knowledge or information," and therefore "*no coverage will be available…for any demand, claim, suit, or proceeding against…arising out of, based upon or attributable to, or in any way involving any Wrongful Act…of which any person or entity proposed has knowledge or information"–* there is no coverage under the Policy for the Government Lawsuits and/or the Kay Demand Letter.

12.     An actual controversy exists between Argonaut and the Insureds, concerning Argonaut's purported obligation to provide the Insureds with a defense and indemnity for the Government Lawsuits and the Kay Letter, and this dispute cannot be resolved without a declaration of the rights and responsibilities of the parties by this Court.

## II. <u>PARTIES</u>

13.     Plaintiff Ironshore is a business corporation incorporated under the laws of the State of Illinois, with its principal place of business located at 175 Berkeley Street, Boston, Massachusetts, 02116.  As such, Plaintiff Ironshore is a citizen of Illinois and Massachusetts.

14.     Plaintiff-Intervenor Argonaut is a business corporation incorporated under the laws of Illinois with its principal place of business in Illinois.  As such, Plaintiff Argonaut is a citizen of Illinois.

15.     Upon information and belief, Defendant Rogas is a citizen of Nevada.

16.     Upon information and belief, Defendant Kay is a citizen of Florida.

## III. <u>JURISDICTION AND VENUE</u>

17.     This court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 respecting diversity jurisdiction insofar as it involves citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

18.     Venue is appropriate under 28 U.S.C. § 1391 because a substantial part of the relevant events occurred in this District, including the issuance of the Policy to NS8's address at "241 W. Charleston Blvd., Suite 111 Las Vegas, NV 89102," as well as much of the conduct at issue involved acts and omissions in Las Vegas, Nevada.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

## IV.  UNDISPUTED BACKGROUND FACTS

**A.     The Insurance Policies**

     **1.      The Primary D&O Insurance Policy**

19.     Scottsdale issued the primary D&O policy to NS8 with a Policy Period of March 4, 2019 to September 4, 2020, with a $2 million Limit of Liability, and pursuant to Endorsement, with a Three-Year Discovery Period (hereinafter, the "Primary Policy").

20.     A true and correct copy of the Scottsdale Policy is attached as Exhibit 1 to the Complaint of the Plaintiff Ironshore Insurance Company in this action.

21.     Section B.1. of the Directors and Officers and Company Coverage Section of the Primary Policy defines "**Claim**," which provides:

    a. a written demand against any **Insured** for monetary damages or non-monetary or injunctive relief;

    b. a written demand by one or more of the securities holders of the **Company** upon the board of directors or the management board of the **Company** to bring a civil proceeding against any of the **Directors and Officers** on behalf of the **Company**;

    c. a civil proceeding against any **Insured** seeking monetary damages or non-monetary or injunctive relief, commenced by the service of a complaint or similar pleading;

    d. a criminal proceeding against any **Insured** commenced by a return of an indictment or similar document, or receipt or filing of a notice of charges;

    e. an arbitration proceeding against any **Insured** seeking monetary damages or non-monetary or injunctive relief; or

    f. a civil, administrative or regulatory proceeding, or a formal governmental investigation against any **Insured** commenced by the filing of a notice of charges, investigative order or similar document.

22.     The Scottsdale Primary Policy defines **Costs, Charges and Expenses** to include "reasonable and necessary legal costs, charges, fees and expenses incurred by any of the **Insureds** in defending **Claims**…".

23.     The Scottsdale Primary Policy's $2 million Limit of Liability has been exhausted and Argonaut presently is paying **Costs, Charges and Expenses** related to the Government Lawsuits subject to full reservation of rights.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

2.      **The Argonaut First Excess Policy**

24.      Argonaut Insurance Company issued a first excess D&O policy to NS8 with a Policy Period of May 23, 2019 to March 4, 2020, which subsequently was extended by Endorsement No. 7 to September 4, 2020.  Coverage under the Argonaut Excess Policy is subject to a $3 million Limit of Liability excess of coverage under the Scottsdale Policy. Pursuant to Endorsement No. 8, the Argonaut Excess Policy also provides a Three-Year Extended Reporting Period.

25.      A true and correct copy of the Argonaut Excess Policy is attached hereto as **Exhibit 1**.

26.      Except as may be otherwise provided in the Argonaut Excess Policy, the Argonaut Excess Policy follows the terms, definitions, conditions, exclusions and limitations of the Scottsdale Primary Policy.

27.      By letter dated May 23, 2019, on NS8's letterhead and executed by NS8's then CEO Rogas, NS8 and Rogas provided an executed "Higher Limits Warranty" to Argonaut, that expressly states:

> *The undersigned authorized signatory hereby represents and warrants on behalf of all persons and entities proposed for insurance, that as respects the $3M excess of $2M Limit of Liability only, after reasonable inquiry, no person or entity proposed for insurance possesses knowledge or information of any actual or alleged fact, circumstance, error, omission, act, misstatement, misleading statement of breach of duty (collectively referred hereinafter as a "Wrongful Act") which is reasonably likely to give rise to a Material Event, as that term is defined by the proposed Argo Flex-XS Follow Form Excess Insurance Policy, except as described below.*
>
> *Further, the undersigned acknowledges on behalf of all persons or entities proposed for insurance that no coverage will be available under the proposed insurance for any demand, claim, suit, or proceeding against, or other matter or circumstance involving, the Insured(s), as that term is defined by the proposed Argo Flex-XS Follow Form Excess Insurance Policy, arising out of, based upon or attributable to, or in any way involving any Wrongful Act which is described below, for any Wrongful Act which is required to be described below or of which any person or entity proposed has knowledge or information.*
>
> *It is understood and agreed that the Insurer has relied upon this statement and the disclosures herein (the "Warranty") as being accurate and complete, and that this Warranty is material to the risk assumed by the Insurer in connection with any decision to bind coverage and is deemed part of the application for the proposed policy.*

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

Wrongful Acts(s)

None

28.     A true and correct copy of the Argonaut Higher Limits Warranty letter is attached hereto as **Exhibit 2**.

**B.     The Underlying Matters**

**1.     SEC Lawsuit**

29.     On November 29, 2019, the SEC sent Subpoenas for documents to NS8 and three individuals, including Rogas.

30.     On September 14, 2020, the SEC filed the SEC Lawsuit against Rogas, captioned: *United States Securities And Exchange Commission v. Adam P. Rogas, et al.*, Case No. 20-7628, filed before the United States District Court for the Southern District of New York.

31.     A true and correct copy of the SEC Lawsuit is attached to the Complaint of the Plaintiff Ironshore Insurance Company as Exhibit 4.

32.     The first paragraph of the SEC Lawsuit alleges:

> 1.     *Beginning in at least 2018* and continuing through the summer of 2020, Defendant Adam P. Rogas ("Defendant" or "Rogas"), a founder and the former Chief Executive Officer ("CEO") of NS8, Inc. ("NS8"), a private technology company, *defrauded NS8 investors* in at least two securities offerings *by falsifying NS8's bank statements* to give the appearance that NS8 was generating millions of dollars in customer revenue with tens of millions of dollars of assets on hand. In fact, NS8 generated only a fraction of the revenue and had far less assets than what appeared in the doctored bank and financial statements provided to investors. (Emphasis added.)

33.     With respect to the Rogas "falsifying NS8 bank statements," at Paragraph 25 and 26 of the SEC Lawsuit, the SEC provides "[a] month-by-month summary of the inflated revenue from the falsified Revenue Account statements is below." Specifically, the SEC Lawsuit alleges "[a]s a result of Rogas's fraudulent conduct," that "*each of the Revenue Account bank statements* distributed to the finance department or externally to investors or prospective investors *from January 2018* through June 2020 *were false*. As a result, each of the NS8 financial statements from 2018 to 2020 were also false and materially misstated, among other things, the balance of the Revenue Account, NS8's revenue, and NS8's assets." (Emphasis added.)  For example, *prior to*

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

_May 29, 2019_ – _when Rogas executed the Warranty Letter_ -- the SEC Lawsuit's month-by-month summary shows 16 statements that were false, including for April 2019 wherein NS8's "**Actual Balance**" in NS8's bank account was $1,001,042.96, versus NS8's allegedly "**Falsified Balance**" of $13,587,745.76, and the "**Falsely Inflated Amount**" whereby Rogas allegedly misrepresented the monies in the bank account _by more than $12 million_:

| Month | Actual Balance | Falsified Balance | Falsely Inflated Amount |
|---|---|---|---|
| Jan-18 | $101,189.80 | $1,138,353.63 | $1,037,163.83 |
| Feb-18 | $103,483.35 | $1,291,295.06 | $1,187,811.71 |
| Mar-18 | $77,823.09 | $1,444,413.21 | $1,366,590.12 |
| Apr-18 | $60,539.44 | $1,644,931.28 | $1,584,391.84 |
| May-18 | $63,864.84 | $1,925,578.12 | $1,861,713.28 |
| Jun-18 | $49,932.17 | $2,262,786.57 | $2,212,854.40 |
| Jul-18 | $51,052.84 | $2,690,807.00 | $2,639,754.16 |
| Aug-18 | $54,208.04 | $3,165,174.61 | $3,110,966.57 |
| Sep-18 | $56,635.29 | $3,730,668.41 | $3,674,033.12 |
| Oct-18 | $10,272.39 | $4,373,334.17 | $4,363,061.78 |
| Nov-18 | $1,869.86 | $5,136,414.04 | $5,134,544.18 |
| Dec-18 | $2,859,995.28 | $8,869,155.52 | $6,009,160.24 |
| Jan-19 | $4,076,163.35 | $15,145,101.78 | $11,068,938.43 |
| Feb-19 | $4,078,713.60 | $15,025,236.22 | $10,946,522.62 |
| Mar-19 | $3,925,343.94 | $15,787,765.08 | $11,862,421.14 |
| Apr-19 | $1,001,042.96 | $13,587,745.76 | $12,586,702.80 |
| May-19 | $1,004,558.83 | $14,993,052.97 | $13,988,494.14 |
| Jun-19 | $506,578.00 | $16,681,077.44 | $16,174,499.44 |
| Jul-19 | $12,284.67 | $17,479,624.51 | $17,467,339.84 |
| Aug-19 | $6,012.48 | $17,992,113.81 | $17,986,101.33 |
| Sep-19 | $5,636.10 | $23,745,307.13 | $23,739,671.03 |
| Oct-19 | $12,339.52 | $26,126,231.51 | $26,113,891.99 |
| Nov-19 | $22,726.71 | $29,150,181.27 | $29,127,454.56 |
| Dec-19 | $32,719.24 | $34,495,297.68 | $34,462,578.44 |
| Jan-20 | $39,005.42 | $38,149,825.57 | $38,110,820.15 |
| Feb-20 | $45,407.75 | $42,244,565.43 | $42,199,157.68 |
| Mar-20 | $52,983.78 | $46,945,839.43 | $46,892,855.65 |
| Apr-20 | $59,389.31 | $51,559,561.43 | $51,500,172.12 |
| May-20 | $70,363.81 | $56,193,852.43 | $56,123,488.62 |
| Jun-20 | $28,051.47 | $62,088,506.43 | $62,060,454.96 |

34.     The SEC Lawsuit (¶26) expressly alleges, "[a]s a result of Rogas's fraudulent conduct, each of the Revenue Account bank statements distributed to the finance department or externally to investors or prospective investors from January 2018 through June 2020 were false. As a result, _each of the NS8 financial statements from 2018_ to 2020 _were also false and materially misstated_, among other things, the balance of the Revenue Account, NS8's revenue, and NS8's assets."

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

**2.      The DOJ Lawsuit**

35.      On the same day as the SEC Lawsuit, on September 14, 2020, the DOJ filed the three count Sealed Criminal Complaint against Rogas for Securities Fraud, Fraud in the Sale of Securities and Wire Fraud.

36.      A true and correct copy of the Sealed Criminal Complaint is attached to the Complaint of the Plaintiff Ironshore Insurance Company as Exhibit 5.

37.      Specifically, the Sealed Criminal Complaint alleges:

6. …From at least in or about 2019[2] through in or about September 2020, ROGAS operated a fraudulent scheme to deceive NS8's investors by falsely inflating the company's reported revenue and assets by substantial amounts. As part of his fraudulent scheme, ROGAS used falsified bank statements to cause material misrepresentations to be made to investors regarding NS8's assets and revenue, including by showing tens of millions of dollars in assets and revenue that did not exist. Through those material misrepresentations, ROGAS enticed investors to purchase securities in two fundraising rounds which provided NS8 with at least approximately $123 million in funds. ROGAS subsequently tendered NS8 shares he owned and otherwise controlled, obtaining at least approximately $17.5 million as a result.

38.      On October 13, 2020, the Criminal Indictment was filed against Rogas which, identical to the Sealed Criminal Complaint, includes three counts against Rogas for Securities Fraud, Fraud in the Sale of Securities, and Wire Fraud.

39.      A true and correct copy of the Criminal Indictment is attached to the Complaint of the Plaintiff Ironshore Insurance Company as Exhibit 6.

40.      Specifically, the Criminal Indictment alleges:

---

[2] Paragraph 14 of the Sealed Criminal Complaint alleges, "From my review of emails provided by NS8, I have learned that ADAM ROGAS, the defendant, provided fraudulently inflated financial statements to existing NS8 investors. For example: a. *On or about January 14, 2019*, in response to a request from an investor for NS8's financial statements, ROGAS sent an email attaching, among other things, a balance sheet and profit and loss statement for 2018, which included fraudulently inflated asset and revenue figures. b. *On or about February 5, 2019*, ROGAS emailed to a New York-based investor one of the Customer Revenue Spreadsheets that, as described above, contained fraudulently inflated revenue figures."

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

**<u>Overview of the Fraudulent Scheme</u>**

3.   <u>*From at least in or about 2019*</u> through in or about September 2020, ADAM ROGAS, the defendant, operated a fraudulent scheme to deceive NS8's investors by falsely inflating the company's reported revenue and assets by substantial amounts. As part of his fraudulent scheme, ROGAS used falsified bank statements to cause material misrepresentations to be made to investors regarding NS8's assets and revenue, including by showing tens of millions of dollars in assets and revenue that did not exist. Through those material misrepresentations, ROGAS enticed investors to purchase securities in two fundraising rounds which provided NS8 with at least approximately $123 million in funds. ROGAS subsequently tendered NS8 shares he owned and otherwise controlled, obtaining at least approximately $17.5 million as a result.

*                         *                         *

8.   <u>*From at least in or about January 2019*</u> up to and including in or about September 2020, in the Southern District of New York, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses…

**3.      <u>The Kay Letter</u>**

41.      On or about July 22, 2021, attorneys representing NS8 sent a letter to attorneys representing the Defendant Kay (the "Kay Letter").  A copy of the Kay Letter is attached as part of Exhibit 7 to the Complaint of the Plaintiff Ironshore Insurance Company.

42.      By letter dated July 26, 2021, the Kay Letter was submitted to Argonaut for potential coverage under the Argonaut Excess Policy.

43.      In the Kay Letter, NS8's attorneys state that they "have determined that Mr. Kay breached his fiduciary duties owed to NS8 as summarized below."

44.      The Kay Letter further states:

Mr. Kay repeatedly learned of the aforementioned irregularities and discrepancies through internal NS8 communications that put him on notice of the fraud being perpetrated by NS8's former CEO, Adam Rogas. For example, NS8's sales and alliances employees advised Mr. Kay that they could identify and verify only a tiny fraction of the many thousands of customers that NS8 touted to board members, investors, and other third parties and that Mr. Rogas presented in purported customer metrics-related documents, despite trying to identify these customers for years. NS8's research and development employees separately communicated exactly the same concerns to Mr. Kay. NS8's finance employees repeatedly advised Mr. Kay of NS8's failure to establish corporate governance and internal controls. They informed Mr. Kay, for instance, that Mr. Rogas maintained exclusive access to NS8's revenue accounts at Bank of America and PayPal, despite their repeated

requests that Mr. Rogas provide them access. An employee whistleblower complaint in 2019 specifically alleged that NS8 was touting false revenue and customer counts, allegations which the SEC determined warranted an investigation.

### 4.   The Asset Freeze Motion and Order

45.   On or about September 14, 2020, the SEC filed a motion in the United States District Court for the Southern District of New York, seeking injunctive relief to freeze Rogas' assets as a result of the allegations of wrongdoing, including the alleged fraudulent bank statements, false statements and other false financial information ("the Asset Freeze Motion").

46.   A true and correct copy of the Asset Freeze Motion is attached to the Complaint of the Plaintiff Ironshore Insurance Company as Exhibit 8.

47.   On or about September 18, 2020, the Court granted the SEC's motion finding among things that the SEC "made a sufficient and proper showing in support of the relief granted herein" which included the freezing of more than $35 million in Rogas' assets ("the Asset Freeze Order").

48.   A true and correct copy of the Asset Freeze Order is attached to the Complaint of the Plaintiff Ironshore Insurance Company as Exhibit 9.

### COUNT I
### REQUEST FOR DECLARATORY JUDGMENT:
### NO DUTY TO DEFEND

49.   Argonaut repeats and realleges each and every allegation set forth above as though fully set forth herein.

50.   There is an actual and justiciable controversy between the parties as to whether Argonaut has a duty to defend the Insureds for the Government Lawsuits and the Kay Letter under the Argonaut Excess Policy, which may be determined by a judgment order of this Court.

51.   The Government Lawsuits and the Kay Letter are barred from coverage under the Argonaut Excess Policy based on the Warranty Exclusion, and/or other terms, conditions and exclusions of the Argonaut Excess Policy.

52.   Specifically, through the Higher Limits Warranty, Rogas, "*on behalf of all persons and entities proposed for insurance,*" "represent[ed] and warrant[ed]" to Argonaut that "*no person*

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

*or entity proposed for insurance possesses knowledge or information of any actual or alleged fact, circumstance, error, omission, act, misstatement, misleading statement of breach of duty (collectively referred hereinafter as a "Wrongful Act") which is reasonably likely to give rise to a Material Event,"* yet according to the Government Lawsuits Rogas had such "knowledge or information," and therefore "*no coverage will be available…for any demand, claim, suit, or proceeding against…arising out of, based upon or attributable to, or in any way involving any Wrongful Act…of which any person or entity proposed has knowledge or information"*– there is no coverage under the Policy for the Government Lawsuits and/or the Kay Demand Letter.

53.    In addition, the Scottsdale Policy provides at Section C.l. of the Directors and Officers and Company Coverage Section that the Insurers shall not be liable for Loss on account of any Claim alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving, any Wrongful Act, fact, circumstance or situation which any of the Insureds had knowledge of prior to the Continuity Date where such Insureds had reason to believe at the time that such known Wrongful act could reasonably be expected to give rise to such Claim.

54.    As a result of the foregoing, coverage is precluded, and Argonaut has no duty to defend the Insureds for the Government Lawsuits and the Kay Letter under the Argonaut Excess Policy.

WHEREFORE, Argonaut respectfully requests that this Court enter a judgment in Argonaut's favor declaring:

a.    Argonaut owes no duty to defend the Insureds, nor to pay any **Costs, Charges and Expenses** on behalf of the Insureds, under the Argonaut Excess Policy for the Government Lawsuits and the Kay Letter; and

b.    Any and all other relief this Court may deem just and proper.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

## COUNT II
## REQUEST FOR DECLARATORY JUDGMENT:
## NO DUTY TO INDEMNIFY

55.     Argonaut repeats and realleges each and every allegation set forth above as though fully set forth herein.

56.     There is an actual and justiciable controversy between the parties as to whether Argonaut has a duty to indemnify the Insureds for the Government Lawsuits and the Kay Letter under the Argonaut Excess Policy, which may be determined by a judgment order of this Court.

57.     The Government Lawsuits and the Kay Letter are barred from coverage under the Argonaut Excess Policy based on the Warranty Exclusion, and/or other terms, conditions and exclusions of the Argonaut Excess Policy.

58.     As a result of the foregoing, coverage is precluded, and Argonaut has no duty to indemnify the Insureds for any Loss related to the Government Lawsuits and the Kay Letter under the Argonaut Excess Policy.

WHEREFORE, Argonaut respectfully requests that this Court enter a judgment in Argonaut's favor declaring:

    a.  Argonaut owes no duty to indemnify the Insureds for any **Loss** under the Argonaut Excess Policy for the Government Lawsuits and the Kay Letter; and

    b.  Any and all other relief this Court may deem just and proper.

DATED this ___ day of _____, 2021

LEWIS BRISBOIS BISGAARD & SMITH LLP

By   /s/ _____
        Jeffrey D. Olster
        Nevada Bar No. 8864
        6385 S. Rainbow Boulevard, Suite 600
        Las Vegas, Nevada 89118
        *Attorneys for*
        *ARGONAUT INSURANCE COMPANY*

15



LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

# EXHIBIT 1

# EXHIBIT 1



Insurer Home Office Address:
10101 Reunion Place, Suite 500
San Antonio, TX 78216

Insurer Administrative Office:
225 W. Washington Street
Chicago, Il 60606

# ARGO FLEX-XS<sup>SM</sup>
## FOLLOW FORM EXCESS INSURANCE POLICY

**THIS POLICY APPLIES ONLY TO CLAIMS FIRST MADE (UNLESS OTHERWISE PROVIDED) AGAINST THE INSURED DURING THE POLICY PERIOD.  DEFENSE COSTS AND CLAIM EXPENSES MAY REDUCE THE LIMIT OF LIABILITY AVAILABLE TO RESPOND TO COVERED LOSS. THE INSURER MAY NOT ASSUME A DUTY TO DEFEND.**

**PLEASE READ THIS POLICY CAREFULLY AND DISCUSS THE COVERAGE PROVIDED WITH YOUR INSURANCE AGENT OR BROKER.**

## DECLARATIONS

**INSURER**

☒ Argonaut Insurance Company

**PRODUCER**

AmWINS Brokerage of PA
100 Tournament Drive, Suite 214
Horsham, PA 19044

Policy No.:   MLX 4243885-0

Renewal of Policy No.:  New

Terms appearing in **bold** are defined in the Policy.

Item 1.  Named Insured:          NS8, Inc.
Principal Address:     241 West Charleston Blvd, Suite 111
Las Vegas, NV 89102

Item 2.  **Policy Period:**
From:      May 23, 2019      12:01 a.m. (Local time at the Named Insured's address)
To:         March 4, 2020     12:01 a.m. (Local time at the Named Insured's address)

Item 3.  Limit of Liability          $3,000,000 excess

Item 4.  **Underlying Insurance** and **Insurance Products:**          See Endorsement No. 1

Item 5.   Annual Premium                    $10,400

Item 6.   Extended Reporting Period:
          Additional Premium for the Extended Reporting Period:   100% of Annualized Premium
          Length of the Extended Reported Period:
          1 Year(s)                                    One year(s)

Item 7.   Notices to **Insurer**:

Claims:                                     All Other Notices:
Attn:   ARGO GROUP US                       Attn:   ARGO GROUP US
        Management Liability - Claims               Management Liability - Underwriting
        610 Broadway, 4th floor                     610 Broadway, 4th floor
        New York, NY 10012                          New York, NY 10012
        212-607-8800                                212-607-8800
        ArgoMLClaims@argogroupus.com

Item 8.   Endorsements Applicable to Coverage at Inception of Policy:

AG ML 2040 EX (4 15)   Argo Group US Privacy Policy

AG ML 1127 EX (1 15)   Policyholder Disclosure Statement Under the Terrorism Risk Insurance Act

AG ML 1192 EX  (5 10)   Policyholder Notice - US Dpt of Treas for Asset Control (OFAC)

AG ML 1136 EX (5 10)   Schedule of Underlying Insurance and Insurance Products Endorsement

AG ML 1179 EX (5  10)   Nevada Amendatory Endorsement

AG ML 2034 EX (5 10)   State Amendatory Inconsistency

AG ML 1121 EX (5 10)   Acceptance of Followed Policy Applications

AG ML 2045 EX (9 15)   Amend Extended Reporting Period (Followed Form)

AG ML 2059 EX (9 15)   Pending & Prior Litigation Exclusion (Follow Form)

This Policy shall not be valid unless also signed by another duly authorized representative of the **Insurer**.

Countersigned:                              By:

Date: August 20, 2019                       Authorized Representative:

**FOLLOW FORM EXCESS INSURANCE POLICY**

**ARGO FLEX-XS**[SM]



In consideration of the payment of the premium and in reliance upon all information provided and all statements made in the application(s) for this Policy and the **Underlying Insurance**, the **Insurer** and the **Insured(s)** agree as follows:

**I.     INSURING AGREEMENT**

With respect to each **Insurance Product**, this insurance shall apply in excess of all applicable **Underlying Insurance** for **Material Events**.  Except as otherwise provided in this Policy, the insurance afforded hereunder shall apply in conformance with the provisions of the **Followed Policy**, to the extent that coverage is not further modified or restricted by any other **Underlying Insurance**.  In no event shall this Policy provide broader coverage than the most restrictive policy of **Underlying Insurance**.

The insurance afforded under this Policy shall not apply unless and until all **Underlying Insurance** with respect to an applicable **Insurance Product** has been exhausted by actual payment of **Loss** thereunder.

**II.     DEFINITIONS**

**A.**     "**Claim**" has the same meaning as attributed to that term in the **Followed Policy**.

**B.**     "**DIC Insurer**" means an insurer who drops down and pays **Loss,** pursuant to an excess difference in conditions policy issued specifically to be excess of this Policy that is not paid by **Underlying Insurance** pursuant to an excess difference in conditions policy written specifically in excess of this Policy.  The policy written by the **DIC Insurer** is not part of  the **Underlying Insurance**.

**C.**     "**Followed Policy**" means the specific policy identified as the "**Followed Policy**" under the applicable **Insurance Product** identified in Endorsement No. 1. attached to this Policy.

**D.**     "**Insurance Product**" means each separate type of insurance identified as an "**Insurance Product**" in Endorsement No. 1, attached to this Policy.

**E.**     "**Insured(s)**" means all persons or entities entitled to coverage under the **Followed Policy**.

**F.**     "**Insurer**" means the insurer identified in the Declarations.

**G.**     "**Loss**" shall have the same meaning as attributed to that term in the **Followed Policy**.

**H.**     "**Material Events**" means:

AG ML 1103 EX (1/14)

    1.    a **Loss** first discovered during the **Policy Period** by any **Insured(s)** in connection with any **Underlying Insurance** that is a bond; or

    2.    a **Claim** first made during the **Policy Period** against an **Insured** in connection with any other **Underlying Insurance**, whether written on a "claims made," "occurrence," or other basis.

**I.**    "**Policy Period**" means the period from the inception date of this Policy to the expiration date of this Policy as stated in Item 2. of the Declarations, or its earlier cancellation or termination date.

**J.**    "**Underlying Insurance**" means each insurance policy which constitutes all or part of an **Insurance Product**, as scheduled in Endorsement No. 1, attached to this Policy.

**K.**    "**Underlying Limits**" means the aggregate sum of all limits of liability of all **Underlying Insurance** with respect to each **Insurance Product** scheduled in Endorsement No. 1, attached to this Policy, in addition to the retention or deductible that is applicable to the **Followed Policy** for such **Insurance Product**.

For the purposes of these Definitions, the singular includes the plural and the plural includes the singular, unless otherwise indicated.

## III.    DEPLETION OF UNDERLYING LIMITS

**A.**    If the **Underlying Limits** are partially exhausted solely as the result of actual payment by the **Underlying Insurance**, this Policy shall continue to apply as excess insurance over the remaining **Underlying Limits**.

**B.**    If the **Underlying Limits** are completely exhausted solely as the result of actual payment by the **Underlying Insurance**, or a **DIC Insurer**, this Policy shall apply as primary insurance with respect to the applicable **Insurance Product(s)**, and be subject to the application of any retention or deductible applicable under the **Followed Policy(ies)**.

**C.**    If any **Underlying Insurance provides for** any coverage subject to a sublimit of liability, this Policy shall not provide such coverage.  However, this Policy shall recognize any reduction of the **Underlying Limits** by any payment subject to such sublimit.

## IV.    LIMIT OF LIABILITY

The Limit of Liability specified in Item 3. of the Declarations shall be the **Insurer's** maximum aggregate limit of liability, and shall be the **Insurer's** maximum amount payable under this Policy for all **Loss** resulting from all **Material Events**.

## V.    NOTICES

The **Insured(s)** shall give notice to the **Insurer** of any **Material Events** contemporaneous with and in conformance with the notice provisions of the **Followed Policy**, except that such notice shall be delivered to the address specified in Item 7. of the Declarations.

The Declarations, the completed and signed application for this Policy, all materials submitted in support of the application or made a part of the application and this policy form constitute the Policy.

## VI.    RIGHTS

The **Insurer** shall have the same rights, privileges and protections afforded in any of the

AG ML 1103 EX (1/14)

**Underlying Insurance**.  The **Insurer** shall also have the right to participate in the investigation, settlement and defense of any **Material Events** noticed under this Policy, even if the **Underlying Limits** have not been exhausted.  The **Insured(s)** shall give the **Insurer** all information and cooperation as the **Insurer** may reasonably request.

**VII.     ALTERATION**

No alteration, change or modification to this Policy shall be effective unless made by endorsement signed by an authorized representative of the **Insurer**.

By:

_____          _____
President                                                                        Secretary

AG ML 1103 EX (1/14)



# Privacy Policy

Argo Group US, Inc. ("Argo Group") recognizes the importance of maintaining the privacy of our customers and the confidentiality of each individual's nonpublic personal information, including Social Security numbers.  We take seriously the responsibility that accompanies our collection of nonpublic personal information, including Social Security numbers.  Accordingly, Argo's corporate policy is to protect the privacy and confidentiality of our consumers and their nonpublic personal information as required by law.

## Information Collection and Use

In order to conveniently and effectively provide and service the insurance products we sell, we may collect and use Social Security numbers and other nonpublic personal information.  As such, this policy does not prohibit the collection or use of Social Security numbers and nonpublic personal information where legally authorized and/or required.  This policy complies with the requirements of the Gramm-Leach-Bliley Act (GLBA) and applicable federal and state laws and regulations implementing the act.  Such laws impose certain obligations upon third persons and organizations with which we share nonpublic personal information of our consumers, customers, former customers, or claimants. Accordingly, we prohibit the unauthorized disclosure of Social Security numbers and other protected nonpublic personal information, except as legally required or authorized.

## Information Sharing and Disclosure

Argo Group does not rent, sell or share your personally identifiable information with nonaffiliated third parties. Argo Group may, however, share personally identifiable information with third-party contractors. These third-party contractors are prohibited from using the information for purposes other than performing services for Argo Group.  Argo Group may disclose your information to third parties when obligated to do so by law and to investigate, prevent, or take action regarding suspected or actual prohibited activities, including but not limited to fraud and situations involving the security of our operations and employees.

Finally, Argo Group may transfer information, including any personally identifiable information, to a successor entity in connection with a corporate merger, consolidation, sale of all or a portion of its assets, bankruptcy, or other corporate change.

## Security

In order to protect your nonpublic personal information, we limit access to nonpublic personal information by only allowing authorized personnel to have access to such information. Furthermore, we maintain physical, electronic and procedural security protections to safeguard the nonpublic personal information in our records.  Documents that contain an individual's protected information are destroyed before disposal; this destruction process includes the shredding of print and disposable media and deletion of electronic media.  Argo Group has security measures in place to protect the loss, misuse and alteration of the information under our control. Our hardware infrastructure is housed in a controlled access facility that restricts access to authorized individuals. The network infrastructure is protected by a firewall and traffic is monitored and logged both on the firewall and servers. Sensitive administrative activities are carried out over secure, encrypted links between our offices and hosting facility. Administrative

access is limited not only to authorized employees but also to specific remote administration protocols and IP addresses. All employees with access to personally identifiable information have been advised of Argo Group's security policies and practices. Argo Group will continue to conduct internal audits of its security systems and make all necessary enhancements to ensure the safety of the website and its users. No method of transmission over the Internet or method of electronic storage is 100% secure; therefore, while Argo Group uses commercially acceptable means to protect your information, we cannot guarantee absolute security.

Any Argo Group employee who becomes aware of the inappropriate use or disclosure of Social Security numbers and other protected nonpublic personal information is expected to immediately report such behavior to the General Counsel for further action.

### **Corrected/Updated Information**

This policy applies to certain insureds of Argo Group, including but not limited to worker's compensation claimants.  If you have any questions about this Privacy Policy, please contact:

General Counsel
Argo Group US, Inc.
P.O. Box 469011
San Antonio, Texas 78246
(210) 321-8400

*Note: Argo Group is the parent of Argonaut Insurance Company; Argonaut-Southwest Insurance Company; Argonaut-Midwest Insurance Company; Argonaut Great Central Insurance Company; Argonaut Limited Risk Insurance Company; ARIS Title Insurance Corporation; Select Markets Insurance Company; Colony Insurance Company; Colony Specialty Insurance Company; Peleus Insurance Company (fka Colony National Insurance Company); Rockwood Casualty Insurance Company; Somerset Casualty Insurance Company; Grocers Insurance Agency, Inc.; Central Insurance Management, Inc.; Alteris Insurance Services, Inc.; Trident Insurance Services, LLC; Commercial Deposit Insurance Agency, Inc.; Sonoma Risk Management, LLC; John Sutak Insurance Brokers, Inc.; Colony Management Services, Inc.; Argonaut Management Services, Inc.; and Argonaut Claims Management, LLC.  This Privacy Policy applies to all companies and business produced or underwritten within Argo Group.

**POLICYHOLDER DISCLOSURE**
**NOTICE OF TERRORISM**
**INSURANCE COVERAGE**

You are hereby notified that under the Terrorism Risk Insurance Act, as amended, you have a right to purchase insurance coverage for losses resulting from acts of terrorism. *As defined in Section 102(1) of the Act*: The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury—in consultation with the Secretary of Homeland Security, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 85% THROUGH 2015; 84% BEGINNING ON JANUARY 1, 2016; 83% BEGINNING ON JANUARY 1, 2017; 82% BEGINNING ON JANUARY 1, 2018; 81% BEGINNING ON JANUARY 1, 2019 and 80% BEGINNING ON JANUARY 1, 2020, OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

**Acceptance or Rejection of Terrorism Insurance Coverage**

    X           I hereby elect to purchase terrorism coverage for a prospective premium of
                      $Included .

                      I hereby decline to purchase terrorism coverage for certified acts of terrorism. I understand that I will have no coverage for losses resulting from certified acts of terrorism.

| | |
|---|---|
| _____ | NS8, Inc. |
| Policyholder/Applicant's Signature | Named Insured |
| | |
| _____ | Argonaut Insurance Company |
| Print Name | Insurance Company |
| | |
| _____ | MLX 4243885-0 |
| Title | Policy Number |
| | |
| _____ | AmWINS Brokerage of PA |
| Date | Producer |

© 2015 National Association of Insurance Commissioners

# POLICYHOLDER NOTICE
# U.S. DEPARTMENT OF TREASURY OFFICE OF FOREIGN ASSET CONTROL
# ("OFAC")

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of this Policy.  Please read the Policy and review the Declarations page for complete information on the coverage provided by it.

This Policyholder Notice provides information concerning the potential impact on the coverage provided under this Policy due to directives issued by OFAC.  Please read this Notice carefully.  Please also review any economic and trade sanctions exclusion that may be attached to the Policy.

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency".  OFAC has identified and listed numerous"

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons".  This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that any Insured, or any other person or entity claiming the benefits of this Policy, has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this Policy shall be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC.  When an insurance policy is considered to be such a blocked or frozen contract, no payments or premium refunds may be made without authorization from OFAC.  Other limitations on the premiums and payments also apply.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SCHEDULE OF UNDERLYING INSURANCE AND INSURANCE PRODUCTS ENDORSEMENT

In consideration of the payment of the premium for this Policy, it is hereby understood and agreed that the Schedule of **Underlying Insurance** and **Insurance Products** is as follows:

**A.**   **Insurance Product:  Excess D&O Liability**

**1.**   **Followed Policy**

| Insurer | Policy Number | Limits | Policy Period |
|---|---|---|---|
| Scottsdale Indemnity Company | EKI3286212 | $2,000,000 | 03/04/2019 – 03/04/2020 |

**B.**   **Insurance Product: Not Applicable**

**1.**   **Followed Policy**

| Insurer | Policy Number | Limits | Policy Period |
|---|---|---|---|

**2.**   Other **Underlying Insurance**

| Insurer | Policy Number | Limits | Policy Period |
|---|---|---|---|

All other terms, conditions and exclusions remain unchanged.

This endorsement changes the Policy to which it is attached and is effective on the date issued unless otherwise stated.

Endorsement Effective   May 23, 2019   Policy No.   MLX 4243885-0   Endorsement No.   1

Insured   NS8, Inc.   Premium

Insurance Company   Argonaut Insurance Company   Authorized Signature   *[signature]*

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NEVADA AMENDATORY ENDORSEMENT

In consideration of the payment of the premium for this Policy, it is hereby understood and agreed that the Policy is amended as follows:

The Policy is amended by the addition of the following:

**VIII.    CANCELLATION AND NONRENEWAL**

    **A.**     The **Insurer** shall only cancel this Policy for nonpayment of premium. The **Insurer** shall mail, by certified or first class mail, or deliver written notice of cancellation to the Named **Insured** at the last known address at least ten (10) days prior to the effective date of cancellation. The notice shall state the reason for cancellation.

    **B.**     If the **Insurer** decides not to renew this Policy, the **Insurer** shall mail, by certified or first class mail, or deliver written notice to the Named **Insured** at the last known address at least sixty (60) days prior to the expiration of the **Policy Period**.  The notice shall state the reason for nonrenewal.

All other terms, conditions and exclusions remain unchanged.

This endorsement changes the Policy to which it is attached and is effective on the date issued unless otherwise stated.

Endorsement Effective   May 23, 2019      Policy No.   MLX 4243885-0    Endorsement No.   2

Insured    NS8, Inc.                               Premium

Insurance Company    Argonaut Insurance Company     Authorized Signature

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## STATE AMENDATORY INCONSISTENCY

In consideration of the payment of the premium for this Policy, it is hereby understood and agreed that in the event there is an inconsistency between a state amendatory endorsement attached to this Policy and any term or condition of this Policy, then where permitted by applicable law, the **Insurer** shall apply those terms and conditions of either the amendatory endorsement or the Policy that are more favorable to the **Insured(s)**.

All other terms, conditions and exclusions remain unchanged.

This endorsement changes the Policy to which it is attached and is effective on the date issued unless otherwise stated.

Endorsement Effective   May 23, 2019        Policy No.   MLX 4243885-0    Endorsement No.        3

Insured    NS8, Inc.                                                                Premium

Insurance Company    Argonaut Insurance Company        Authorized Signature

AG ML 2034 EX (5 10)              Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ACCEPTANCE OF FOLLOWED POLICY APPLICATION(S) ENDORSEMENT

In consideration of the payment of the premium for this Policy, it is hereby understood and agreed that the Policy is amended as follows:

For purposes of coverage afforded by this Policy, the term "Application" or "Renewal Application" shall mean the written insurance application(s) attached to the **Followed Policy** and incorporates any written statements and materials attached to the **Followed Policy** in conjunction therewith.

It is agreed by the **Insureds** that this Policy is issued in reliance upon the truth and accuracy of the representations and statements made within the "Application" or "Renewal Application," and all such statements shall be deemed to be material to the risk assumed by the **Insurer**, are the basis of this Policy and are to be considered incorporated into this Policy.

All other terms, conditions and exclusions remain unchanged.

This endorsement changes the Policy to which it is attached and is effective on the date issued unless otherwise stated.

Endorsement Effective   <u>May 23, 2019</u>   Policy No.   <u>MLX 4243885-0</u>   Endorsement No.   <u>4</u>

Insured   <u>NS8, Inc.</u>   Premium

Insurance Company   <u>Argonaut Insurance Company</u>   Authorized Signature

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## AMEND EXTENDED REPORTING PERIOD (Follow Form)

In consideration of the payment of the premium for this Policy, it is hereby understood and agreed that the Policy is amended as follows:

Item 6. of the Declarations is deleted and replaced with the following:

Item. 6.     Extended Reporting Period:

Additional Premium for the Extended Reporting Period:   Same % of Annualized Premium as per **Followed Policy**

Length of the Extended Reporting Period:   Same Length as per **Followed Policy**

All other terms, conditions and exclusions remain unchanged.

This endorsement changes the Policy to which it is attached and is effective on the date issued unless otherwise stated.

Endorsement Effective   May 23, 2019          Policy No.   MLX 4243885-0   Endorsement No.      5

Insured     NS8, Inc.                                                          Premium

Insurance Company     Argonaut Insurance Company          Authorized Signature

AG ML 2045 EX (9/15)                    Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## PENDING AND PRIOR LITIGATION FOLLOW FORM

In consideration of the payment of the premium for this Policy, it is hereby understood and agreed that the Policy is amended as follows:

This policy shall follow form of the **Followed Policy** with respect to prior or pending litigation or matters, subject to the following date:  May 23, 2019.

All other terms, conditions and exclusions remain unchanged.

This endorsement changes the Policy to which it is attached and is effective on the date issued unless otherwise stated.

Endorsement Effective   May 23, 2019        Policy No.   MLX 4243885-0   Endorsement No.        6

Insured     NS8, Inc.                                                                           Premium

Insurance Company     Argonaut Insurance Company       Authorized Signature

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**.

# DECLARATIONS PAGE
# POLICY PERIOD - MODIFIED, WITH ADDITIONAL PREMIUM ENDORSEMENT

In consideration of the Annual Premium set forth in Item 5. of the Declarations, and the additional premium of $12,600 it is hereby understood and agreed that Item 2. of the Declarations is deleted and replaced by the following:

ITEM 2. **Policy Period**

| | | |
|---|---|---|
| From: | May 23, 2019 | at 12:01a.m. (local time at the address stated in Item 1.) |
| To: | September 4, 2020 | at 12:01a.m. (local time at the address stated in Item 1.) |

All other terms, conditions and exclusions remain unchanged.

This endorsement changes the Policy to which it is attached and is effective on the date issued unless otherwise stated.

| | | | | | |
|---|---|---|---|---|---|
| Endorsement Effective | May 4, 2020 | Policy No. | MLX 4243885-0 | Endorsement No. | 7 |
| Insured | NS8, Inc. | | | Premium | |
| Insurance Company | Argonaut Insurance Company | Authorized Signature | | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PURCHASE OF EXTENDED REPORTING PERIOD
## (NO REINSTATED LIMIT OF LIABILITY)

In consideration of the payment of an additional premium of $23,030, it is hereby understood and agreed that the Policy is amended as follows:

The Named Insured has purchased the Three Year Extended Reporting Period in accordance with the terms and conditions of the **Followed Policy**, and Item 6. of the Declarations of this policy. The purchase of the Extended Reporting Period shall in no way increase the Policy's Limit of Liability specified in Item 3. of the Declarations.

All other terms, conditions and exclusions remain unchanged.

This endorsement changes the Policy to which it is attached and is effective on the date issued unless otherwise stated.

| | | | | | |
|---|---|---|---|---|---|
| Endorsement Effective | September 4, 2020 | Policy No. | MLX 4243885-0 | Endorsement No. | 8 |
| Insured | NS8, Inc. | | | Premium | |
| Insurance Company | Argonaut Insurance Company | | Authorized Signature | | |

AG ML 2061 EX (9/15)         Page 1 of 1

# EXHIBIT 2

# EXHIBIT 2

4840-0396-4175.1



Abuse, Fraud, and User Experience Protection Tools.

May 23, 2019

Coverage: Excess D/O Coverage
Named Insured: NS8, Inc.
Insurer: Argonaut Ins Company
Limit of Liability: 3,000,000 excess of $2,000,000
Policy Period: May 23, 2019 to March 4, 2020

The undersigned authorized signatory hereby represents and warrants on behalf of all persons and entities proposed for insurance, that as respects the $3M excess of $2M Limit of Liability only, after reasonable inquiry, no person or entity proposed for insurance possesses knowledge or information of any actual or alleged fact, circumstance, error, omission, act, misstatement, misleading statement or breach of duty (collectively referred to hereinafter as a "Wrongful Act") which is reasonably likely to give rise to a Material Event, as that term is defined by the proposed Argo Flex-XS Follow Form Excess Insurance Policy, except as described below.

Further, the undersigned acknowledges on behalf of all persons or entities proposed for insurance that no coverage will be available under the proposed insurance for any demand, claim, suit, or proceeding against, or other matter or circumstance involving, the Insured(s), as that term is defined by the proposed Argo Flex-XS Follow Form Excess Insurance Policy, arising out of, based upon or attributable to, or in any way involving any Wrongful Act which is described below, for any Wrongful Act which is required to be described below or of which any person or entity proposed has knowledge or information.

It is understood and agreed that the Insurer has relied upon this statement and the disclosures herein (the "Warranty") as being accurate and complete, and that this Warranty is material to the risk assumed by the Insurer in connection with any decision to bind coverage and is deemed part of the application for the proposed policy.

241 W. Charleston Blvd,
Suite 111
Las Vegas, NV 89102

888-453-5291

www.ns8.com



Abuse, Fraud, and User Experience Protection Tools.

Wrongful Acts(s)

None

Adam Rogas.
[Chief Executive Officer]

5/23/18

[Date]

241 W. Charleston Blvd,
Suite 111
Las Vegas, NV 89102

888-453-5291

www.ns8.com