# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Ironshore Indemnity Inc.,

     Plaintiff

v.

Eric Kay,

     Defendant

Case No.: 2:21-cv-01706-JAD-BNW

**Order Denying Cyber Litigation's and Argonauts Motions to Intervene and Cyber Litigation's Motion for Leave to File a Response**

[ECF No. 5, 13, 75]

Ironshore Indemnity Inc. originally filed this suit seeking a declaratory judgment that it has no duty to defend or indemnify Adam Rogas and Eric Kay for insurance claims arising from wrongful acts Rogas allegedly committed while CEO of NS8, a cyber-fraud company.[1]  NS8, now doing business as Cyber Litigation Inc.,[2] seeks to intervene as a defendant, arguing that its entitlements to the insurance proceeds will be affected by any such judgment and that this case should be transferred to the Delaware Bankruptcy Court where Cyber Litigation is currently involved in bankruptcy proceedings.[3]  Ironshore opposes, contending that Cyber Litigation has not shown it is entitled to intervention under Federal Rule of Civil Procedure (FRCP) 24 and that it failed to adhere to the rule's pleading requirement.[4]

Argonaut Insurance Company—another of Rogas, Kay, and Cyber Litigation's insurers—also seeks to intervene as a plaintiff, arguing that it does not have to defend or

---

[1] ECF No. 3 (Ironshore's amended complaint).

[2] I refer to NS8 as "Cyber Litigation" throughout this order, unless recounting events that occurred while it was still named NS8.

[3] ECF No. 5.  Rogas does not oppose Cyber Litigation's motion, and Kay joins in it.  ECF No. 20; ECF No. 46.

[4] ECF No. 10.

indemnify Rogas or Kay for the same insurance claims.[5]  Rogas, Kay, and Cyber Litigation oppose Argonaut's motion, contending that it is merely attempting to evade orders issued by the Delaware Bankruptcy Court.[6]  Ironshore argues that while Argonaut has not met the burden to intervene as of right, it does meet the permissive-intervention standard.[7]

Since these motions were filed, Ironshore voluntarily dismissed its claims against Adam Rogas and now seeks judgment on Kay's insurance claims only.[8]  I ordered supplemental briefing on whether—and if so, how—Rogas's dismissal impacts the pending motions to intervene.  Cyber Litigation, Argonaut, and Kay insist that it has no effect, and Cyber Litigation accuses Ironshore of dismissing Rogas to "avoid the jurisdiction" of the Delaware Bankruptcy Court.[9]  Ironshore contends that the dismissal vastly simplifies this action to its dispute with Kay, which can be quickly resolved by its pending motion for judgment on the pleadings.[10]  I deny both motions to intervene because Argonaut and Cyber Litigation have not met the standards for permissive intervention or intervention as of right.  I also deny as moot Cyber Litigation's motion for leave to file a response to Ironshore's motion for judgment on the pleadings because I am denying its intervention motion.[11]

---

[5] ECF No. 13.

[6] ECF No. 27 at 18–19.

[7] ECF No. 38.

[8] ECF No. 53 (voluntary dismissal of Rogas); ECF No. 54 (Ironshore's motion for judgment on the pleadings).

[9] ECF No. 67 (Argonaut's supplement); ECF No. 68 (Cyber Litigation's supplement); ECF No. 69 (Ironshore's supplemental response); ECF No. 70 (Kay's supplemental response).

[10] ECF No. 69.

[11] *See* ECF No. 75.

**Background**[12]

This insurance dispute arises from the downfall of NS8, a cyber-security company that was based in Las Vegas, and the alleged wrongdoing of its co-founder and former CEO, Adam Rogas. In March 2019, NS8 and Rogas obtained a $2 million directors-and-officers (D&O) insurance policy from Scottsdale Insurance Company.[13] In May 2019, NS8 and Rogas obtained an excess policy from Argonaut for $3 million.[14] They then sought an additional $5 million in excess coverage from Ironshore.[15] But before receiving these higher insurance limits from Argonaut and Ironshore, Rogas signed warranty letters representing that he and "all insureds" had no knowledge or information of wrongful acts that might give rise to a claim or suit under either policy.[16]

In November 2019, the U.S. Securities and Exchange Commission (SEC) began investigating NS8 and Rogas for securities fraud.[17] The following year, the SEC and the U.S. Department of Justice (DOJ) each filed lawsuits against Rogas,[18] alleging that he "defrauded investors by using forged documents to entice investors to purchase NS8 securities" and

---

[12] These facts are taken from Ironshore's amended complaint (ECF No. 3), Cyber Litigation's intervention motion (ECF No. 5), and Argonaut's proposed complaint (ECF No. 13-1) and are not intended as findings of fact.

[13] ECF No. 3 at 1.

[14] *Id.* at 2.

[15] *Id.*

[16] *Id.*; *see also* ECF No. 13-1 at 2. Ironshore's and Argonaut's warranty letters differ, but both were signed by Rogas and represented that he and those insured by the policies had no knowledge or information of wrongful acts that could lead to liability.

[17] ECF No. 3 at 2.

[18] I refer to these cases collectively as "the Rogas actions."

"pocketed over $17.5 million that has been raised through his fraud."[19]  Some of the allegations in those lawsuits claim that Rogas began defrauding investors in 2018—before he signed the warranty letters.[20]  NS8 was subpoenaed in both Rogas actions, has been cooperating with DOJ and SEC requests, and has been incurring attorney fees and costs in the process.[21]

In October 2020, NS8 filed for Chapter 11 bankruptcy protection in the U.S. Bankruptcy Court for the District of Delaware.[22]  As part of the bankruptcy action, NS8 sold many of its assets—including the rights to the name NS8—and changed its name to Cyber Litigation.[23]  Cyber Litigation considers the proceeds of each insurance policy to be part of its bankruptcy estate, has exhausted the coverage offered by the Scottsdale policy, and is at least $1,462,000 into the $3 million limit of Argonaut's coverage.[24]  It has not yet made claims for coverage under Ironshore's policy, but it anticipates needing to do so.[25]  Some of those costs were associated with Cyber Litigation's cooperation with the SEC and DOJ actions against Rogas.[26]  Others relate to reimbursing defrauded creditors through the bankruptcy estate.[27]  The bankruptcy court has issued numerous orders concerning the payment of insurance proceeds as part of Cyber

---

[19] *Id.* (quoting *SEC v. Adam Rogas, et al.*, Case No. 20-7628 (S.D.N.Y.); SEC's "Motion for Asset Freeze, Order to Show Cause, and Other Relief," p.1).

[20] *Id.* at 3; ECF No. 13-1 at 3.

[21] ECF No. 5 at 7–8.

[22] *See In re Cyber Litigation Inc.*, Case No. 20-12702 (CTG).

[23] ECF No. 5 at 4 n.1.

[24] *Id.* at 8.  Cyber Litigation claims that it also has $965,000 in pending claims awaiting Argonaut's approval and reimbursement.  *Id.*

[25] *Id.*

[26] *Id.*

[27] *Id.* at 16; ECF No. 27 at 2.

1  Litigation's bankruptcy estate.[28]  Rogas and Kay have also sought orders to access insurance

2  proceeds through Cyber Litigation's bankruptcy action.[29]

3        In July 2021, Cyber Litigation sent a demand letter to Eric Kay, co-founder and former

4  director and Chief Legal Officer of NS8, claiming that Kay breached his fiduciary duties to NS8

5  because he was on notice of Rogas's fraud and did not investigate or inform NS8's board of it.[30]

6  Kay then sent Ironshore a letter notifying it of the demand and "request[ing] coverage pursuant

7  to the terms and conditions of the Policy."[31]  Ironshore filed this action in September 2021,

8  seeking a declaratory judgment absolving it of the duty to defend and indemnify Rogas, Kay, and

9  "all Insureds" for the Rogas actions and the Kay demand letter.[32]  It alleges that these claims are

10  excluded from coverage because they arose from wrongful acts that Rogas committed before he

11  signed the Ironshore warranty letter.[33]

12        In November 2021, Cyber Litigation moved to intervene as a defendant in this case,

13  positing that any such judgment would affect its interest in the proceeds of Ironshore's policy.[34]

14  It attached as its proposed pleading a motion to transfer this case to the Delaware Bankruptcy

15  Court, arguing that the Delaware court is already familiar with the issues and should decide the

16  case because it concerns assets of Cyber Litigation's bankruptcy estate.[35]

17

18  _____

19  [28] ECF No. 5 at 8–9.

    [29] *Id*. at 9–10.

20  [30] ECF No. 3-8 at 4–7.

21  [31] *Id*. at 2.

    [32] ECF No. 3 at 11–13.

22  [33] *Id*.

23  [34] ECF No. 5.

    [35] ECF No. 5-1.

Argonaut then filed a motion to intervene as a plaintiff, alleging that the warranty letter Rogas signed to receive its excess policy also bars coverage of the Rogas actions and the Kay demand letter.[36]  In its reply supporting its intervention motion, Cyber Litigation also opposes Argonaut's intervention motion, contending that Argonaut is attempting to evade bankruptcy court orders and has stopped paying Cyber Litigation's costs associated with the Rogas actions.[37] Rogas and Kay join in that opposition.[38]  In December, Ironshore voluntarily dismissed Rogas from this action and filed a motion for judgment on the pleadings as to the claims against Kay.[39] Ironshore seeks judgment declaring that it has no duty to defend against or indemnify Kay for the demand letter that Cyber Litigation served on Kay alleging breach of his fiduciary duties.

## Discussion

### I.      Legal standards for intervention

FRCP 24 governs the two forms of intervention that are available in federal cases: of right and permissive.[40]  To intervene as of right under FRCP 24(a), "(1) the application for intervention must be timely; (2) the applicant must have a 'significantly protectable' interest relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest must not be adequately

---

[36] ECF No. 13.

[37] ECF No. 27 at 18–19.

[38] ECF No. 35; ECF No. 47.

[39] ECF No. 53 (notice of voluntary dismissal); ECF No. 54 (motion for judgment on the pleadings).

[40] Fed. R. Civ. P. 24.

represented by the existing parties in the lawsuit."[41]  "The party seeking to intervene bears the burden of showing that *all* the requirements for intervention have been met."[42]

Rule 24(b) concerns permissive intervention and authorizes the court to permit anyone to intervene who can show "(1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action."[43]  "Even if an applicant satisfies those threshold requirements, the district court has discretion to deny permissive intervention" if it "will unduly delay the main action or will unfairly prejudice the existing parties."[44]

Rule 24(c) requires all intervention motions to "state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought."[45] The Ninth Circuit has relaxed this obligation, noting that "the failure to comply with the Rule 24(c) requirement for a pleading is a 'purely technical' defect which does not result in the 'disregard of any substantial right.'"[46]  Courts may "approve[] intervention motions without a pleading where the court was otherwise apprised of the grounds for the motion."[47]

---

[41] *U.S. v. Sprint Commc'ns, Inc.*, 855 F.3d 985, 991 (9th Cir. 2017) (quoting *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 817 (9th Cir. 2001)).

[42] *U.S. v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004) (citing *U.S. v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002)).

[43] *Blum v. Merrill Lynch Pierce Fenner & Smith Inc.*, 712 F.3d 1349, 1353 (9th Cir. 2013) (citing *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992)).

[44] *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998) (citations omitted).

[45] Fed. R. Civ. P. 24(c).

[46] *Westchester Fire Ins. Co. v. Mendez*, 585 F.3d 1183, 1188 (9th Cir. 2009) (quoting *Shores v. Hendy Realization Co.*, 133 F.2d 738, 742 (9th Cir. 1943)).

[47] *Beckman*, 966 F.2d at 474.

## II.     Argonaut's intervention motion [ECF No. 13]

Argonaut moves to intervene as a plaintiff in this action.[48]  It contends that Rogas signed a warranty letter similar to Ironshore's before Argonaut issued its excess policy.[49]  It attaches to its motion a proposed complaint seeking a declaratory judgment against Rogas, Kay, and all insureds for claims related to the DOJ and SEC actions and the Kay demand letter.[50]

### A.     Argonaut cannot intervene as of right.

Argonaut does not have an interest in the property at issue in this action—*Ironshore's* insurance proceeds.  And it fails to sufficiently establish how disposition of Ironshore's proceeds will affect Argonaut's policy. Argonaut contends that its complaint "sets forth in detail its legal interests in this matter and those interests are clear and substantial" and that "Argonaut's coverage defenses are substantially the same as Ironshore's defenses and the claims and defenses in the lawsuit therefore may impact Argonaut's potential liability under the Argonaut Excess Policy."[51]  But these conclusory statements do not demonstrate any interest in the Ironshore proceeds at issue here.

Argonaut has also failed to show that intervention is necessary to protect Argonaut's interests in its own policy proceeds.  It merely states, without legal or factual authority or explanation, that any rulings here "could have some preclusive effect on Argonaut's rights under its policy."[52]  I fail to see how.  Preclusion is meant to prevent parties from "contesting matters

---

[48] ECF No. 13.

[49] *Id.* at 2.

[50] ECF No. 13-1.

[51] ECF No. 13 at 5.

[52] *Id.* at 6.

8

that they have had a full and fair opportunity to litigate."[53]   The Supreme Court has repeatedly recognized that "[t]he application of claim and issue preclusion to nonparties thus runs up against the 'deep-rooted historic tradition that everyone should have his own day in court.'"[54]   Here, the parties are exclusively Ironshore and Kay, and the issues to be decided relate to the language in Ironshore's policy.  Argonaut fails to show how the resolution of those issues would affect Argonaut's ability to protects its own interests if it similarly seeks to escape liability for the Kay demand letter.  So, because Argonaut has not satisfied these two FRCP 24(a) requirements, I do not consider the rest, and I deny Argonaut intervention as of right.

**B.     Permissive intervention is not warranted for Argonaut.**

Argonaut has also not shown that permissive intervention is warranted here.  While Argonaut has likely demonstrated that it has an independent ground for diversity jurisdiction,[55] it has not sufficiently shown a common question of law and fact between its claims and Ironshore's.  While Rogas signed similar warranties under the Ironshore and Argonaut policies, the language of the warranties is different and will require separate analysis to determine if Rogas's actions justify the exclusion of coverage under them.[56]   And now that Ironshore has dismissed its claims against Rogas, adding him back into this suit as a defendant to Argonaut's

---

[53] *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)).

[54] *Id*. at 893 (quoting *Richards v. Jefferson Cnty.*, 517 U.S. 793, 798 (1996)).

[55] As a citizen of Illinois, Argonaut is diverse from Rogas (Nevada), Kay (Florida), and Cyber Litigation (Delaware).  ECF No. 13-1.  Argonaut also satisfies the amount-in-controversy requirement as the proceeds of a $3 million policy are at issue.  *Id*. at 6.

[56] *See 8th Wonder Pictures, LLC v. Clear Distr, LLC*, 2021 WL 2323726, at *4 (C.D. Cal. April 27, 2021) (denying permissive intervention because "[t]he claims generally involve separate questions of law and facts because they are based on two different contracts").

1  claims will only serve to complicate this otherwise simple insurance-coverage dispute.  So I

2  exercise my discretion to deny Argonaut's motion for permissive intervention.

3  **III.     Cyber Litigation's intervention motion [ECF No. 5]**

4          Cyber Litigation moves to intervene with the intent of transferring this case to the

5  Delaware Bankruptcy Court.  But before I consider whether Cyber Litigation can transfer, I must

6  find that its intervention as a defendant in *this* court is warranted.

7          **A.     Intervention as of right is not available to Cyber Litigation.**

8          Cyber Litigation contends that it satisfies each Rule 24(a) requirement for intervention as

9  of right.  But I consider only whether Kay will adequately represent Cyber Litigation's interests

10 in this action, as that factor is dispositive.  To determine whether an intervenor's interest is

11 adequately represented, courts consider "(1) whether the interest of a present party is such that it

12 will undoubtedly make all the intervenor's arguments; (2) whether the present party is capable

13 and willing to make such arguments; and (3) whether the would-be intervenor would offer any

14 necessary elements to the proceedings that other parties would neglect."[57]  "The prospective

15 intervenor has the burden of demonstrating that the existing parties do not adequately represent

16 its interest."[58]  "[T]he requirement of inadequate representation is satisfied if the applicant shows

17 that representation 'may be' inadequate."[59]  But "where an applicant for intervention and an

---

[57] *N.W. Forest Res. Council v. Glickman*, 82 F.3d 825, 838 (9th Cir.  1996) (quoting *California v. Tahoe Reg'l Planning Agency*, 792 F.2d 775, 778 (9th Cir. 1986)).

[58] *Id.*

[59] *Id.* (quoting *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983), *aff'd*, 790 F.2d 760 (9th Cir. 1986)).

1  existing party have the same ultimate objective, a presumption of representation arises."[60]  That

2  presumption "can be rebutted only by a compelling showing to the contrary."[61]

3       Ironshore has shown that Cyber Litigation and Kay share the same objective: "to avoid

4  the application of the Ironshore [w]arranty [e]xclusion."[62]  Cyber Litigation, like Kay, ultimately

5  seeks a declaratory judgment finding that Ironshore's warranty exclusion does not apply to Kay's

6  demand letter.  While Cyber Litigation states that it has "unique" claims, defenses, and

7  arguments separate from Kay's, it does not explain what they are.  Indeed, Cyber Litigation's

8  recently filed proposed response to Ironshore's motion for judgment on the pleadings raises

9  arguments nearly identical to those raised by Kay in his response.[63]  Cyber Litigation fails to

10  demonstrate that Kay's legal representation is incapable of diligently defending this litigation

11  and raising all arguments that Cyber Litigation would raise if it were a party.  So, because Cyber

12  Litigation has not overcome the presumption of representation arising from it's and Kay's shared

13  objectives in this case, it is not entitled to intervention as of right.

14       **B.    Cyber Litigation has not satisfied FRCP 24(c)'s pleading requirement.**

15       Cyber Litigation attached to its intervention motion a proposed motion to transfer this

16  case to the Delaware bankruptcy court, and it urges me to consider that motion as its "pleading"

17  ────────────────────

[60] *Id.* (internal quotations omitted).

18
[61] *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 841 (9th Cir. 2011) (internal

19  quotations omitted).

[62] ECF No. 10 at 12.  Ironshore's initial response also referred to Rogas's ability to adequately

20  represent Cyber Litigation's interests.  But because Ironshore has since voluntarily dismissed its
claims against Rogas, I do not consider those arguments.

21
[63] *Compare* ECF No. 75-1 (Cyber Litigation's proposed response) *with* ECF No. 73 (Kay's

22  response).  The only argument Cyber Litigation affirmatively points to as unique from those
Rogas would make—that Rogas's "knowledge of [w]rongful [a]cts he concealed from [Cyber

23  Litigation] cannot be imputed to [Cyber Litigation] due to language barring such imputation in
the underlying Scottsdale policy"—is made by Kay in his opposition to the motion for judgment
on the pleadings.  ECF No. 27 at 4 (Cyber Litigation's reply); ECF No. 73 at 17–18.

sufficient to satisfy Rule 24(c)'s requirement.[64]  Rule 7(a) contains an exhaustive list of the pleadings allowed in federal court, and a motion to transfer is not on that list.[65]  And the use of a transfer motion as a "pleading" is incompatible with the purpose of Rule 24(c): to "set out the *claim or defense* for which intervention is sought."[66]  And while the Ninth Circuit in some instances has excused the failure to comply with the technical requirements of Rule 24(c), its reasoning does not extend to the circumstances here.  In *Beckman Industries v. International Insurance Company*, for example, the Ninth Circuit held that technical compliance with Rule 24(c) was not fatal to an intervenor's motion where the intervention was sought to modify a protective order, not join as a party to the case.[67]  And in *Westchester Fire Insurance v. Mendez*, the Ninth Circuit considered a judgment creditor's request to intervene in an insurance dispute between the debtor and his insurer.[68]  The Ninth Circuit excused noncompliance with FRCP 24(c) because the creditor's interest was "obvious: it wants to be able to collect its judgment against [the debtor] from the [] insurance policy and it cannot do that if [the insurer] is not liable under that policy."[69]  It reasoned that, if the reason for intervention is so obvious, technical noncompliance is not a valid reason to deny intervention.[70]

---

[64] *See* ECF No. 5-2; ECF No. 5 at 18–19.

[65] *See* Fed. R. Civ. P. 7(a) (stating that the only pleadings allowed in federal court are a complaint; an answer to a complaint; an answer to a counterclaim designated as a counterclaim; an answer to a crossclaim; a third-party complaint; an answer to a third-party complaint; and if the court orders one, a reply to an answer).

[66] Fed. R. Civ. P. 24(c) (emphasis added).

[67] *Beckman*, 966 F.2d at 474.

[68] *Mendez*, 585 F.3d at 1188.

[69] *Id.*

[70] *Id.*

1      Cyber Litigation's interest is not so obvious here.  It does not indicate how it would wish

2 to participate in this case if I were to grant its intervention motion but deny its transfer motion.

3 While it claims it has "unique rights" and "different claims"[71] from Kay, its failure to file a

4 proposed pleading prevents me from determining how those distinct rights and claims relate to

5 the pending action.  So I decline to consider Cyber Litigation's motion to transfer as its Rule

6 24(c)-required pleading.

7      **C.**    **Cyber Litigation is not entitled to permissive intervention.**

8      Even if I determined that Cyber Litigation's motion to transfer complied with Rule 24(c),

9 I would still deny its request to intervene on a permissive basis.  Ironshore contends that

10 allowing Cyber Litigation to intervene for the sole purpose of transferring this case to the

11 Delaware bankruptcy court would unduly prejudice it.[72]  It argues that "[i]t is hornbook law that

12 a plaintiff's choice of forum is to be given significant discretion" and that allowing intervention

13 solely for the purposes of depriving it of that choice is prejudicial.[73]

14      Ironshore's argument is compelling.  Ironshore chose to bring this case in Nevada

15 because the policy at issue was "issued to a Nevada addressed company . . . , the [w]arranty

16 [l]etter as issue from Rogas to Ironshore comes from a Nevada address, [and] the policies

17 expressly include and incorporate a 'Nevada' [a]mendatory [e]ndorsement . . . ."[74]  The only tie

18 to Delaware is Cyber Litigation's bankruptcy proceeding, and Cyber Litigation has not

19

20

21

---

22  [71] ECF No. 5 at 11, 17.

  [72] ECF No. 10 at 21–22.

23  [73] *Id*. at 21 (citing *Gulf Oil. Corp. v. Gilbert*, 330 U.S. 401 (1946)).

  [74] *Id*. at 22 (citations and parentheticals omitted).

1    convincingly shown that Ironshore has availed itself of that forum.[75]  Nor has Cyber Litigation

2    shown that the bankruptcy court is in any particularly special position to handle this run-of-the-

3    mill insurance-coverage dispute that, as narrowed by Rogas's dismissal, relates only to Kay's

4    entitlement to proceeds from Cyber Litigation's threatened lawsuit against him.  So, because

5    allowing intervention for the sole purpose of transfer will prejudice Ironshore, I deny Cyber

6    Litigation's permissive-intervention request.[76]  And because I deny Cyber Litigation's motion to

7    intervene, I also deny as moot its motion for leave to file a reply to Ironshore's motion for

8    judgment on the pleadings.

9                                               **Conclusion**

10          IT IS THEREFORE ORDERED that Cyber Litigation's and Argonaut's motions to

11   intervene **[ECF Nos. 5, 13] are DENIED**.

12

13

14   _____

15   [75] In its supplemental briefing, Ironshore makes clear that it has not participated in any of the
     motions that Cyber Litigation, Rogas, and Kay have filed in the bankruptcy court seeking
     insurance coverage.  ECF No. 69 at 3.

16   [76] *See, e.g.*, *Calderon v. Clearview AI, Inc.*, 2020 WL 2792979, at *8 (S.D.N.Y. May 29, 2020)

17   ("There is little question that Plaintiffs who have either sued or consented to transfer to New
     York would be prejudiced if [the proposed intervenor] is granted permission to intervene, since

18   he does not seek to litigate here and only hopes to have the New York [a]ctions dismissed,
     stayed, or transferred . . . ."); *Travis v. Navient Corp.*, 284 F. Supp. 3d 335, 346–47 (E.D.N.Y.

19   2018) ("permitting proposed intervenors to intervene [for the purpose of moving to dismiss, stay,
     or transfer the action] would prejudice the rights of [the parties] given that they wish to proceed

20   before this [c]ourt"); *Glover v. Ferroro USA Inc.*, 2011 WL 5007805, at *7 (D.N.J. Oct. 20,
     2011) (denying permissive intervention because intervenors' "stated interest in only having th[e]

21   action dismissed or transferred . . . w[ould] clearly prejudice the rights of existing parties").  In
     cases that have found otherwise, the intervenors sought to transfer to a district with a similar case

22   already pending under the first-to-file rule.  *See Subbaiah v. GEICO General Ins. Co.*, 2019 WL
     9904278, at *7 (C.D. Cal. Dec. 11, 2019); *Tonkawa Tribe of Indians of Oklahoma v. Scientific*

23   *Games Co.*, 2012 WL 3847802, at *4–5 (D. Nev. Aug. 27, 2021).  While Cyber Litigation does
     have a pending bankruptcy action in Delaware, the claims Ironshore brings here against Kay
     have little to do with Cyber Litigation's bankruptcy proceedings.

IT IS FURTHER ORDERED that Cyber Litigation's motion for leave to file a response to Ironshore's motion for judgment on the pleadings **[ECF No. 75] is DENIED.**

_____
U.S. District Judge Jennifer A. Dorsey
February 1, 2022